# CHARLESTON.

PAN COAL CO. *v.* GARLAND POCAHONTAS COAL CO. *et al.*

Submitted March 4, 1924.    Decided October 14, 1924.

1.  ACTION—*Count for Mining and Carrying Away Coal May be Joined With One for Breaking and Entering Premises and Injuring Other Coal.*

    In an action of trespass on the case a count in the nature of trespass de bonis asportatis, such as for mining and carrying away plaintiff's coal, may be joined with a count in the nature of trespass quare clausum fregit, as for breaking and entering plaintiff's close and doing injury to other of plaintiff's coal. (p. 371).

2.  BOUNDARIES—*Refusal of Resurvey of Disputed Boundary Line, in Action for Wrongful Mining and Taking of Coal, Held Not Erroneous.*

    Upon trial of such an action, where there is a dispute as to the boundary line between plaintiff's and defendant's properties, the refusal of defendant's request for an order of survey is not erroneous, where it appears that both parties have had the line surveyed by competent engineers, maps of their surveys made, and the engineers testified in relation thereto. (p. 373).

3.  PLEADING—*Refusal to Require Plaintiff to File Bill of Particulars, Where Declaration Sufficiently States Claim, Held Not Erroneous.*

    Where a declaration states the grounds of the action and particulars of plaintiff's claim with sufficient definiteness to give the defendant notice thereof, the refusal of the court to require the plaintiff to file a bill of particulars, specifying greater particularity of plaintiff's claim is not error. (p. 373).

4.  TRESPASS—*Actual or Constructive Possession Sufficient to Maintain Action of Trespass or Trespass on Case.*

Either actual or constructive possession is sufficient to maintain an action of trespass or trespass on the case for damage to real estate, (p. 374).

5.  TRUSTS—*Trustee Having Legal Title May Convey Title to Another, as Though Beneficial Owner; Grantee With Notice or Without Consideration Becomes Trustee Subject to Beneficiaries' Rights; Trustee in Actual or Constructive Possession May Maintain Action for Damages to Real Estate.*

Where the legal title to real estate is conveyed to a trustee, without in terms vesting in the trustee power of sale, the trustee has the power at law to convey the title to another, as if the trustee were the beneficial owner. The grantee, if he has notice of the trust, or if the conveyance be without consideration, himself becomes a trustee and holds the legal title subject to the rights of the beneficiaries. Such new trustee may maintain an action of trespass on the case for damage to the real estate by reason of his constructive possession emanating from his legal title or by showing actual possession of the real estate. (p.374).

6.  TRESPASS—*Trustee's Deed Admissible, in Action for Trespass, as Part of Chain of Title, Though Trustee not Authorized in Terms to Convey.*

In the trial of an action for trespass to realty, a deed made by a trustee conveying the legal title to the plaintiff or his predecessor in title is admissible in evidence as part of plaintiff's chain of title, though the trustee was not in terms authorized to convey. (p. 374).

7.  MINES AND MINERALS—*Measure of Damages for Trespasser's Removal of Coal Depends on Whether Innocent or Wilful.*

In an action for the value of coal wrongfully mined and removed from plaintiff's lands by a trespasser, the measure of damages depends upon whether the trespass was innocent or wilful. (p. 376).

8.  SAME—*Measure of Damages for Mining and Carrying Away Coal by Innocent Trespass Stated; Measure for Mining and Carrying Away Coal by Wilful Trespass Stated.*

If the trespass be committed, not recklessly, but through inadvertence or mistake, or in good faith, under an honest belief that the trespasser was acting within his legal rights, it is an innocent trespass, and the measure of damages for the

coal mined and carried away is the value of the coal in place, usually to be ascertained by finding its value at the pit-mouth or loading tipple and deducting therefrom the expense of mining and carrying it to the pit-mouth or tipple. But if the trespass be wilful, in an action for the value of the coal so mined, the measure of damages is its value at the pit-mouth or loading tipple, without deduction for mining and carrying it to the place of conversion. (p. 376).

9. SAME—TRESPASS—*Damages for Coal Mined by Trespasser, Whether Innocent or Wilful, Compensatory Only; Ground of Rule for Allowance or Disallowance of Labor and Expense in Case of Trespass Stated.*

In an action for the recovery of the value of coal mined by a trespasser, the damages therefor are compensatory only, whether the trespass be innocent or wilful. The disallowance of labor and expense in case of wilful trespass is not based on the ground of allowing plaintiff exemplary or punitive damages, but on the principle that one who wilfully commits a wrong is not entitled to profit thereby, while the innocent trespasser, who in good faith has improved the property, has acquired a certain right in it and is entitled to credit for the value added thereto at his expense, whenever the plaintiff asserts his right to the property. (p. 376).

10. SAME—*Trespasser's Good Faith Question of Fact Determined From Particular Facts and Circumstances; Good Faith of Coal Mining Company in Mining Coal of Another Under Agreement for Jury.*

Whether the trespasser acted in good faith is a question of fact to be determined from all the facts and circumstances in the case. Hence where the plaintiff, an active coal mining corporation, sues the defendant, also an active coal mining corporation, for mining and carrying away plaintiff's coal, and the defense is based upon an agreement made between plaintiff's superintendent and defendant's general manager whereby defendant was to have the right to mine certain of plaintiff's coal in exchange for the right on plaintiff's part to mine part of defendant's coal and in addition thereto to have the right of a haulway over certain of defendant's lands for moving its timber, defendant asserting that it acted upon the agreement in good faith, under an honest belief of its right, and shows that that portion of its coal which plaintiff was to have the right to mine under the agreement had been left for that purpose and that plaintiff had constructed and used the haulway over defendant's lands, whether defendant acted in good faith under an honest belief as to its right

to mine plaintiff's coal is a question of fact to be determined by the jury. (p. 380).

11.    SAME—*Measure of Damages for Coal Rendered Unminable by Wilful Trespass not Value at Pit Mouth or Tipple.*

In an action of trespass on the case for the recovery of the value of coal alleged to have been mined and removed by a wilful trespasser, and to recover damages to other of plaintiff's coal rendered unminable, when warranted by the evidence, it is proper to instruct the jury that if they find that the trespass was wilful, the correct measure of damages for the coal mined and removed is its value at the pit-mouth or loading tipple, when mined, without deducting therefrom any cost of mining or carrying it to the loading tipple; but it is error, in such case, to instruct the jury that the measure of damages for the coal rendered unminable by defendant is the same as that stated for the coal mined. (p. 386).

12.    SAME—*Measures of Damage for Rendering Unmined Coal Unrecoverable With and Without Malice Stated.*

The correct measure of damages in an action of trespass for rendering unmined coal unrecoverable is the value of the coal in place, unless the trespass be malicious, in which event punitive damages are recoverable. (p. 386).

Error to Circuit Court, McDowell County.

Action by the Pan Coal Company against the Garland Pocahontas Coal Company and others. Judgment for plaintiff, and the named defendant brings error.

*Reversed; verdict set aside; new trial awarded.*

*Harman & Harman* and *Howard & Howard,* for plaintiff in error.

*Strother, Sale, Curd & Tucker, Strother & French, Taylor & Taylor,* and *John L. Early,* for defendant in error.

MEREDITH, PRESIDENT:

Defendant complains of a judgment rendered in an action for trespass upon plaintiff's coal lands.

Plaintiff sued to recover (1) the value of coal wilfully mined and removed from its premises, and (2) damages for injury done to its unmined coal. Counsel for defendant urge that the declaration is subject to demurrer, because they say

in effect that plaintiff's case is based on two theories,—first, that it seeks recovery of the value of the coal mined, without deduction of the expense of mining, and second, it seeks to recover damages done to the freehold. They argue that the second demand includes the first; but the declaration is not so drawn. As already stated, it charges that defendant wilfully mined and removed a large tonnage of coal of the value of $100,000, for which it seeks recovery; it also alleges that defendant conducted its mining operations on plaintiff's property so as to make it impossible for plaintiff to mine large quantities of its coal left unmined; that by reason thereof plaintiff has been and will be compelled to expend large sums of money which it otherwise would not have been required to do, in conducting its mining operations, whereby it has been greatly damaged. It seeks recovoery therefore for two items, one for the coal mined and removed, the other for damages to the coal unmined.

Counsel for defendant cite, among other authorities, 26 R. C. L., p. 973, which they say is applicable to the case here. It says:

"In actions of trespass for the wrongful severance of trees from the land of another, the plaintiff has his election between an action of trespass de bonis asportatis and trespass quare clausum fregit. If he brings the former action, the proper measure of damages is the value of the trees destroyed independent of the real estate. If he brings the latter action, the measure of damages is the diminished value of the real estate. In the latter case the compensation for the increased value of the trees can not be included."

We do not question the proposition stated. But suppose the defendant while wrongfully cutting and manufacturing some of plaintiff's trees into lumber also injures other standing trees of plaintiff or destroys buildings or other property of the plaintiff; in other words, does an injury to plaintiff's realty other than the mere removal of the trees. Can not the plaintiff recover in the one action for the value of the trees removed as well as the other damages done to the realty? We see no reason why he can not, and some of the

cases cited by defendant's counsel so hold. This view is fully sustained by 3 Sedgwick, Damages, §933; *Spink* v. *Railroad Company,* 26 R. I. 115, 58 Atl. 499; *Halstead* v. *Sigler,* 35 Ind. App. 419, 74 N. E. 257; *Chase* v. *Clearfield Lumber Company,* 209 Pa. 422, 58 Atl. 813; and by our recent case of *Spruce River Coal Company* v. *Valco Coal Company,* 95 W. Va. 69, 120 S. E. 302. That the two demands are joined in the same declaration makes no difference. They grow out of the same tort; that one count in effect is in trespass de bonis asportatis, that is, for the carrying away of part of plaintiff's coal, and the other in trespass quare clausum fregit, that is, for breaking and entering plaintiff's premises and doing injury to other of plaintiff's coal, is not objectionable. *Shaffer* v. *Western Maryland R. R. Co.,* 93 W. Va. 300, 116 S. E. 747. The declaration as framed does not admit of a double recovery as to either item; hence we conclude that the demurrer was properly overruled.

Plaintiff and defendant own adjoining mining leaseholds, separated by a line which runs almost due east and west. Plaintiff's property lies on the north side. The eastern end of the line is not in dispute, but the western end is. Defendant admittedly mined coal on plaintiff's side; but if the line is where defendant would locate it, the quantity of coal taken from plaintiff's property would be very much less than if the line be located where plaintiff claims. On the call of the case for trial, defendant asked for an order of survey, but this was refused. This is the second point of error assigned. Defendant was not prejudiced. Both sides had competent engineers who testified that they had surveyed the line in dispute; numerous maps made by them were admitted in evidence, and we do not see that any survey made by a surveyor under an order of court could throw any further light on the matter. We find no error on this point.

The third ground urged for reversal is that the court overruled defendant's motion for a bill of particulars. Under the allegations in the declaration, defendant was fairly apprised of plaintiff's demands. It was not taken by surprise. We do not think the trial court exceeded its discretion, as the case comes fairly within the rule laid down in *Clarke* v. *Ohio River*

*R. R. Co.*, 39 W. Va. 732, 20 S. E. 696; *State* v. *Counts*, 90 W. Va. 338, 110 S. E. 812.

Defendant's fourth assignment of error is that the court erroneously admitted in evidence certain deeds which are parts of plaintiff's chain of title to its leasehold,—one made by M. S. Taylor, Trustee, to Pan Coal Company, and another made by J. W. Chapman, Trustee, to McDowell Pocahontas Coal Company. It is urged that these two deeds are void because the grantors as trustees had no authority to execute them. McDowell Pocahontas Coal Company executed a coal mining lease to R. C. Sweet and J. S. Wallace, covering 1418 acres. By deed Sweet assigned his half interest to M. S. Taylor, Trustee, "to have and to hold the same unto the said M. S. Taylor, Trustee, and his assigns", for the residue of the term, free from encumbrances, but subject to the conditions and provisions of the lease. The assignment confers no express authority on Taylor to sell or convey, though the authority might be implied from the use of the words "and his assigns", if that were necessary to a decision in the present case. Taylor, as trustee, and Wallace assigned the lease to Pan Coal Company. Prior to these conveyances, St. Clair and others conveyed to J. W. Chapman, Trustee, 5684½ acres of coal land, covering part of the lands in controversy, to be held by the trustee pursuant to a certain written agreement filed with the Bank of Tazewell. On May 10, 1911, J. W. Chapman, as Trustee under that agreement, conveyed to McDowell Pocahontas Coal Company seventeen-eighteenths of the 5684½ acres, subject to certain exceptions. That trust agreement was not offered in evidence; hence defendant's contention that the two deeds made by the two trustees were executed without authority and that they have no legal effect. There would be force in this argument if this case were in equity in a contest between the trustees and the beneficial owners; but this is an action at law. These trustees held the legal title, and as such had the power to convey it even in violation of their trusts. The law is thus stated in *Atkinson* v. *Washington & Jefferson College*, 54 W. Va. 32, 46 S. E. 253, where Judge POFFENBERGER quotes with approval from Perry on Trusts as follows:

"  'Trustees of real or personal estate may, at

law, sell, convey, assign, or incumber the same, as if they were the beneficial owners, and each of several trustee may exercise all his rights of ownership. If the trustees are joint tenants, each may receive the rents, and each may sever the joint tenancy by a conveyance of his share, and each may collect the dividends on stocks, and on the death of one, the survivor may sell the whole estate. The general power of a trustee to sell and convey the estate is co-extensive with his ownership of the legal title; and this general power over the legal title is entirely distinct from the execution of a special power given in respect to the sale of an estate. Though the trustees may thus sell, even in breach of the trust, a conveyance without consideration will not injure the *cestui que trust;* as the grantee, who is a volunteer, will hold upon the same trusts as the trustee held, and if the purchaser for a valuable consideration have notice of the trust he will still hold the estate upon the trust.' Perry on Trusts, section 334.''

" 'As a general rule, the legal estate in the hands of a trustee has, at common law, precisely the same properties, characteristics, and incidents, as if the trustee were the absolute beneficial owner. The legal title vests in him, together with all the appurtenances and all the covenants that run with the land. The trustee may sell and devise it, or mortgage it, or it may be taken on execution. It may be forfeited, and it will escheat on failure of heirs, and so it will descend to heirs on the death of the trustee. All these properties and incidents attach to the legal estate at common law, whether in the hands of a trusteee or of an absolute owner; but these incidents do not generally interfere with the proper execution of the trust, for all conveyances and all incumbrances made or imposed upon the estate by the trustee, for other purposes than those of the trust, or in breach of the trust, are utterly disregarded by a court of equity, whatever may be the effect of such conveyances or incumbrances in a court of common law.' Perry on Trusts, section 321.''

It was held in *High's Heirs* v. *Pancake,* 42 W. Va. 602, 26 S. E. 536, that ''To sustain trespass quare clausum fregit, the plaintiff must have constructive possession emanating from

legal title, or he must have actual physical possession." Plaintiff did not have actual physical possession of the particular portions of the coal vein that were invaded by defendant. But it did have the legal title with constructive possession emanating therefrom extending to the boundaries of its deed; that included the parts of the vein mined or injured by defendant. *Haigh* v. *Bell*, 41 W. Va. 19, 23 S. E. 666. "Either actual or constructive possession will maintain trespass for damage to realty." *Wilson* v. *Phoenix Powder Mfg. Co.*, 40 W. Va. 413, 21 S. E. 1035. The trustees could maintain trespass, having the legal title and constructive possession. 39 Cyc. p. 447; *Mechan* v. *Edwards*, 92 Ky. 674, 18 S. W. 519, 19 S. W. 170; *Aford's Adm'r* v. *City of Stanford*, 13 Ky. L. Rep. 876; *Knox* v. *Metropolitan El. R. Co.*, 58 Hun. (N. Y.) 517, 28 N. E. 485; 26 R. C. L. p. 959. It necessarily follows that plaintiff has all the rights in the premises that the trustees had. The trustees may have violated their trusts, though there is nothing in the record indicating that they did; but if they did so, their deeds would not be void at law. Doubtless these deeds were made at the request of the beneficiaries. At any rate, the defendant has no right to complain. If the trustees exceeded their authority, plaintiff acquiring the property with notice of the trusts, would itself be accountable as a trustee, to the beneficiaries; but that is a matter between them, and is of no concern to the defendant. We are therefore of opinion that it was not error to admit the two deeds in evidence.

The fifth and main ground urged is that the court misdirected the jury as to the measure of damages. The jury returned the following verdict:

> "We, the jury, find for the plaintiff 12,528 tons net at $2.00 per ton, $25,056
>  Damages                                             1,500
>
> _____
>
>                                          $26,556
> "And we establish the old patent line as the true line."

The verdict was then amended so as merely to assess damages against the defendant to the amount of $26,556. One of the matters in controversy was the true location of

the boundary line, which the jury found to be at the "old patent line"; the evidence is conflicting on this point, but the finding as to the division line is fairly justified. Assuming this line to be located as claimed by defendant, a line slightly different from the old patent line, it encroached upon plaintiff's property at four points, designated on plaintiff's exhibit No. 7 as Sections 1, 4, 6 and 7. Locating it as found by the jury, defendant encroached at seven sections, numbered from 1 to 7. Defendant admits encroachments at sections 1, 4, 6 and 7. It makes no defense as to sections 4, 6 and 7, which are very small areas, but it claims it was authorized by a parol agreement made between Carroll Taylor, plaintiff's superintendent and J. W. Baldwin, defendant's general manager, to mine section number 1, covering 2.15 acres, in exchange for a like right on plaintiffs part to mine some of defendant's coal, with the additional right to a road-way across defendant's land for hauling timber. This was denied by plaintiff; but even if plaintiff's superintendent so agreed, it was clearly shown that he had no authority to make any such agreement. He could not bind his principal so as to estop it from recovery for the coal mined on plaintiff's property. *Carroll-Cross Coal Co.* v. *Abrams Creek Coal & Coke Co.*, 83 W. Va. 205, 98 S. E. 148. But defendant's counsel stress the point that the trespass upon section number 1 was not wilful; that it was made under what defendant thought was a valid agreement, in good faith, under a bona fide claim of right, and therefore the question whether the trespass was wilful or innocent was a question for the jury. The point was raised by defendant's instructions numbers 1 and 2 which were refused. Number 1 is as follows:

"The court instructs the jury that if they shall believe from the evidence in this case that the plaintiff's mine superintendent, Carroll Taylor, and defendant's mine manager, J. W. Baldwin, had an agreement as testified to by the latter by which they were to exchange certain coal, whereby the plaintiff was to be given a timber right of way over the defendant company's premises, and the further right to mine a certain territory of the defendant company's coal and defendant company was to mine and remove a certain territory of the

> plaintiff's coal, that pursuant to such an agreement the said Baldwin, acting in good faith and in the reasonable and honest belief that he had the right to do so, mined and removed certain coal of the plaintiff which the said Taylor so undertook to give Baldwin the right to mine and remove, then that such mining and removal thereof was not in bad faith or wilful, and the plaintiff in this case is entitled to recover therefor the value of such coal in place at the time of such mining and removal, which is the then market value thereof at the drift mouth or pit mouth of the mine to which it was so removed, less the cost of such mining and removal.''

Whether the trespass was innocent or wilful, of course, does not affect the right but merely the amount of recovery. Defendant does not claim that it should, under the alleged agreement, be relieved from paying for the coal mined from section one; if the coal was removed through innocent mistake or inadvertence it would be compelled to pay for it, but at its value in place. However, if the trespass was wilful, then the value at the tipple or pit-mouth would be the basis of recovery, the defendant not being allowed to deduct from that value any expense for mining or hauling the coal to that point. There is no controversy as to the law governing the measure of recovery. The precise point is whether there was sufficient evidence of good faith on defendant's part to permit the question whether the defendant was a wilful or an innocent trespasser to go to the jury. J. W. Baldwin testified that Carroll Taylor and he agreed upon an exchange of coal, to the mutual benefit of both companies; that this was at the request of plaintiff's superintendent. But no lines were run, no definite portions were agreed on; the areas were just pointed out in a general way, it being understood that the areas to be exchanged should be about equal; that plaintiff was to have a roadway for some timber over defendant's land; that defendant mined the area on plaintiff's property agreed upon and Baldwin supposed plaintiff was mining the coal agreed upon to be mined on defendant's land, as that area had been left for that purpose; that plaintiff shot out the

rock for and graded the roadway on defendant's land and used it in hauling its timber. Defendant began mining section number 1 in August or September, 1921, some months after the alleged agreement was made. There was some correspondence between the president of the plaintiff company, M. S. Taylor, and Mr. Baldwin regarding an exchange, beginning in April, 1921, and continuing some weeks; Taylor states he would submit the matter to his board of directors, but that as they were located at various points, it would require considerable time to have a meeting. Finally Taylor made a proposition which defendant's manager would not accept, and the matter fell through. Defendant claims no right because of the correspondence. It seems to relate to a larger area than that encroached upon, and whether it included section No. 1 does not appear. Defendant relies upon the agreement made with plaintiff's superintendent, Carroll Taylor. It alleges that it performed its part of the agreement in good faith; in like manner it permitted the plaintiff to use its land for a haulway and would have allowed plaintiff to mine the coal on defendant's land covered by the agreement; had in fact thought this was being done until this controversy arose. But Carroll Taylor had no authority to make any such agreement, nor was it shown that the company had held him out as having any such authority. Had he been the chief owner of plaintiff company, and been allowed to pursue a course of dealing with the company's property that showed he dictated its policy, the situation might be different. In that event his failure to obtain the formal assent of his board of directors might not be material. But here the superintendent was not the chief owner; he did not dictate the company's policy; he was not held out as having authority other than that of a superintendent,—that and no more. No authority to make such an agreement could be implied from his mere holding of that office. It is but fair to say that Carroll Taylor unequivocally denies that he ever made or attempted to make any such agreement. In regard to the roadway he says that he instructed his foreman to build it on a cliff above defendant's line, and was called away on some other business; that when he returned he found that the

road had been· built lower down than where he had located
it, and it extended for about two· feet of its width over on
defendant's land for a distance of about seventy-five feet;
that the road was used by both parties. But there is nothing
to indicate that the plaintiff's board of directors knew that
defendant claimed any right to mine plaintiff's coal because
of plaintiff's use of the roadway, or in fact that the board
knew anything about the roadway, other than its acceptance
of the benefits derived from its use. Other than this there
is nothing to show any ratification of the alleged agreement.
But Carroll Taylor's testimony can not be considered in
passing upon the propriety of defendant's instruction. If
upon defendant's showing there was sufficient evidence of
its good faith to submit the matter to the jury, then the
instruction should have been given.

Assuming that plaintiff's superintendent made the agree-
ment, when defendant dealt with him it was bound to know
the extent of his authority, and this applies to any represen-
tations made by him as to the extent of his authority. *Thomp-
son* v. *Manufacturing Company,* 60 W. Va. 42, 53 S. E. 908;
*Uniontown Grocery Co.* v. *Dawson,* 68 W. Va. 332, 69 S. E.
845; *Carroll-Cross Coal Co.* v. *Abrams Creek Coal & Coke
Co., supra.* He could make no contract beyond the authority
given which would bind his company; but the question is
not whether the alleged contract is valid. Its invalidity is
conceded. This is not an action on the contract; the de-
fendant merely seeks to excuse its conduct by showing it
acted under an alleged contract (which turns out to be an
invalid one) in good faith, with the honest belief that it was
acting within its rights. We see no reason why in a proper
case this might not be done. It is true that every one is pre-
sumed to know the law and intends the natural and probable
effects of his acts, presumptions which apply to innocent as
well as to wilful trespassers. As was said by Judge Sanborn,
in *United States* v. *Homestake Mining Co.,* 117 Fed. Rep. 481
(C. C. A.):

"If either or both these presumptions make
every trespasser a wilful and intentional wrong-
doer, because he is chargeable with knowledge of

the law, then there never has been, and never can be, a trespasser through inadvertence or mistake, or one who violates the law in the honest belief that he is acting within his legal rights; and the rule that the damages caused by such a trespasser shall be limited to the value of the wood or timber in the tree or of the ore in its bed, which was announced in *Bolles Wooden-Ware Co.* v. *United States,* 106 U. S. 433, 434, 27 L. Ed. 230, and which has been reiterated and applied in numerous cases since, is *functus officio* and useless, because no class or party to which it is applicable can ever be. The truth is, however, that this rule, and every other rule which measures the damages caused by trespassers, does not call the righteous, but sinners to restitution. None of these rules have any application to those who do not violate the law. Every trespasser breaks the law, and to every trespasser the maxim applies that every man knows the law. Notwithstanding all this, the law in its wisdom, perceives the marked difference between the heinousness of the offenses of those who recklessly, or with actual intent to rob others of their rights, trespass upon their property, and of those who trespass by mistake, and with no evil purpose; no actual, wilful intent to commit a wrong; and it declares that the former class shall pay to their victims the full value of the lumber or the ore they take at the time they sell or use it, while the latter shall be relieved from liability upon restitution of the value of the timber in the trees or of the value of the ore in the mine. The maxim that every man knows the law applies to all the members of both classes alike. It neither differentiates the classes nor their members, and it has no more relevancy to the real question which cases of this character present than the proposition that three and three are six. The question is always based on the conceded propositions that the defendant has violated the law and that every man knows the law. The question, then, is, did the trespasser violate the law, which he constructively knew, recklessly, or with an actual intent to do so, and to take an unconscientious advantage of his victim, or did he violate it inadvertently, unintentionally, or in the honest belief that he was exercising his

own right? If the former, he was a wilful tres-
passer, and the value of the manufactured timber
or the extracted ore measures his liability. If the
latter, he was an innocent trespasser, and the value
of the wood in the tree or of the ore in the mine
is the limit of his indebtedness. The test to deter-
mine whether one was a wilful or an innocent
trespasser is not his violation of the law in the
light of the maxim that every man knows the law,
but his honest belief, and his actual intention at
the time he committed the trespass; and neither a
justification of the acts nor any other complete de-
fense to them is essential to the proof that he who
committed them was not a wilful trespasser.
*Durant Min. Co.* v. *Percy Consol. Min. Co.,* 93
Fed. 166, 35 C. C. A. 252; *Gentry* v. *U. S.,* 101
Fed. 51, 41 C. C. A. 185; *U. S.* v. *Van Winkle,* 113
Fed. 903, 51 C. C. A. 533.''

In that case the United States sued to recover damages
for certain timber that defendant had cut and removed from
government lands; the question involved was whether the
stumpage value or the value as manufactured lumber should
be the basis of recovery. Defendant claimed the trespass
was not wilful because it acted under a permit from the
Secretary of the Interior. It was found that under the law
as it then stood the Secretary had no authority to issue the
permit, but that defendant acted under advice of counsel,
in good faith, and was liable for the stumpage value only.

In our case of *Pittsburgh & West Virginia Gas Company*
v. *Pentress Gas Co.,* 84 W. Va. 449, 100 S. E. 296, 7 A. L. R.
901, it was held that:

"One who, with full knowledge of the facts
which make his claim of title to land invalid enters
thereon and commits trespass, is a wilful tres-
passer within the meaning of the law, even though
he may honestly believe that under such known
facts the law confers upon him good title."

This statement is probably too broad, though correct when
applied to the facts in that case. There the defendants, claim-
ing under junior oil and gas leases, obtained injunctions
restraining the plaintiffs from drilling the lands and sought a

cancellation of the senior leases, which they claimed had become forfeited. The trial court on final hearing perpetuated the injunction and cancelled the senior leases. While the injunction was in force the defendants drilled two producing oil wells on the land. The plaintiffs upon appeal obtained a reversal of the decrees and their leases were held valid. *Johnson* v. *Armstrong,* 81 W. Va. 399, 94 S. E. 753. The owners of the senior leases then sued to recover the value of the oil extracted and it was held that the junior claimants were wilful trespassers, and therefore were not entitled to any allowance for expense of production. This holding was based on the fact that the junior claimants knew that the senior claimants not only did not concede but were strenuously contesting their claims. They fought them all the time and at every step of the way. Their rights were in litigation while the drilling was going on. Under such circumstances we held they could not assert they were acting in good faith under a bona fide claim of right so as to excuse themselves from the charge of being wilful trespassers, even though they acted upon the advice of counsel, and honestly believed they had the superior right, since they should have refrained from trespassing until their right was finally determined by the court.

But a different conclusion was reached in *Kahle* v. *Crown Oil Co.,* 180 Ind 131, 100 N. E. 681, where after a decree cancelling the Crown Oil Company's lease, but before appeal was taken therefrom, Kahle Bros. and Gray entered and drilled producing oil wells. On appeal the Crown lease was held valid, but the rival claimants were held to be innocent trespassers, hence liable only for the value of the oil produced, less the cost of production, because they did not know that an appeal would be taken from the decree cancelling the Crown lease.

Can we say as a matter of law that the defendant was a wilful trespasser as to section No. 1? If he was, then the refusal of defendant's instruction was not error. If we can not, then it became a question for the jury, and should have been submitted to it. That defendant intentionally mined out the section, knowing it was plaintiff's coal, there can be

no doubt. In the sense that it did it intentionally its trespass was wilful. But so is every trespass under a bona fide claim of right. However, in the law of trespass, the terms intentional and wilful are not always synonymous.

For instance, let us assume that A owns a tract of coal land; that B, the agent of A for some purposes, mistakenly assumes that he, B, has the right to lease it for mining; that he leases it to C, who also honestly believes that B as A's agent has the right to lease it. C intentionally enters upon it and mines the coal. It turns out that B exceeded his authority and had no right to make the lease. A sues C for the trespass and for the value of the coal mined and removed, insisting that he is entitled to damages done to his unmined coal and to damages equal to the value of the mined coal at the pit-mouth as of the time it was removed and sold. Is C a wilful trespasser merely because he intentionally did what he honestly believed he had a right to do? Not necessarily so. In this sense to be a wilful trespasser one must not only intentionally commit the act of trespass, but must do so under such circumstances as would warrant the court or jury in finding that he did it in bad faith. If C had reason to believe and did believe that B had authority to execute the lease, he ought not to be treated as a wilful trespasser. It will not do to say that C was bound to know the extent of B's authority and therefore in law knew that B had no such authority, and because of such imputed knowledge knowingly entered without legal right and thereby became a wilful trespasser. To so hold would in every instance make one who invades the lands of another under license from the owner's agent, where the agent exceeded his authority, a wilful trespasser, even though both trespasser and agent honestly believed the agent had full authority to grant the license. This may be illustrated by a number of cases, in which the facts are not exactly like those in the present case, but which involve the same principle.

In *Keys* v. *Pittsburgh & Wheeling Coal Co.*, 58 Ohio St. 246, 41 L. R. A. 681, 65 A. S. R. 754, 50 N. E. 911, it was held that where a purchaser acting in good faith under a belief that the title to property in which he is mining coal will be

perfected by proceedings to be instituted for that purpose by the infant owners' guardian or by the infant grantors when they arrive at age, continues to mine coal and convert it to his own use, the measure of damages in an action for the trespass is the value of the coal in place at the time it was mined. Here the contract was not completed; the guardian had no right to sell his wards' coal. That could be done only through the authority of the probate court. The purchaser had no legal right to enter the wards' lands. It was clearly a trespasser; but the court found it acted in good faith and was only liable as for an innocent trespass.

In *Trotter* v. *Maclean*, L. R. 13 Ch. Div. 574, 49 L. J. Ch. N. G. 256, 10 Mor. Min. Rep. 263, it appeared that the owner of a coal mine worked from his own mine into an adjoining mine, in the bona fide belief that he was to obtain a contract authorizing him to work, and gave to the trustee in charge of the adjoining land notice that he was about to commence working the mine. It subsequently developed that the trustee had no power to make the contract. In an action for trespass it was held that the taking of the coal by defendant before he was notified that the contract would not be let should be treated as an inadvertent or innocent trespass.

Other cases in point are: *Trustees of Dartmouth College* v. *International Paper Co.*, 132 Fed. 92; *Crawford* v. *Forest Oil Co.*, (Pa.) 57 Atl. 47; *Montrozona Gold Min. Co.* v. *Thatcher*, 19 Col. App. 271, 75 Pac. 595; *Campbell* v. *Smith*, 180 Ind. 159, 101 N. E. 89; *Wood* v. *Weaver*, 121 Va. 250, 92 S. E. 1001; *Jegon* v. *Vivian*, L. R. 6 Ch. 742-763, 17 Eng. Rul. Cases, 843; *Wright* v. *Bentley Lumber Co.*, 186 Ala. 616, 65 So. 353.

While the facts in this case are somewhat like those found in *Carroll-Cross Coal Co.* v. *Abrams-Creek Coal & Coke Co.*, 83 W. Va. 205, 98 S. E. 148, yet the issue here is entirely different from the issue there. There the plaintiff trespasser sought to enjoin the defendant from prosecuting two actions at law instituted by defendant against the plaintiff, one for statutory penalties for mining within the five-foot area along the boundary line without the adjoining owner's consent in writing, and the other for the value of coal mined by plaintiff

beyond its boundary line, as well as the value of additional coal rendered unminable by such operations. The plaintiff in the chancery cause pleaded and relied upon a contract made between plaintiff's superintendent and defendant's general manager providing for the exchange of certain coal areas. We held there that the general manager had no implied authority to trade or lease any part of his company's coal; that the unauthorized and unratified agreement made by the general manager did not estop the defendant from recovery of compensation for the coal mined by plaintiff under the alleged agreement, nor from enforcing the statutory penalties, but we did not say what would be the measure of the compensation for the coal mined, nor determine whether the trespass was innocent or wilful. That was a suit based upon the contract; we held that the contract was one which could not be enforced and affirmed the decree dissolving the injunction. But here defendant does not seek to enforce a contract, but merely seeks to make use of it so as to obtain the benefits of its own labor and moneys expended in reliance upon it, which it says were performed and expended in good faith, in the honest belief that it had the right. It does not claim that it should not pay plaintiff for the coal mined on its land, but that having mined it in good faith, it should have credit for its expenses. In the instant case, Baldwin, defendant's general manager, says that when the contract was made he asked Taylor whether he had authority from his company to make it and that Taylor told him he had. In this Baldwin is corroborated by others who testify they heard the conversation. It seems to us that under these circumstances the jury should determine whether the defendant on the one hand acted in good faith, honestly believing it had a right to mine the coal, or on the other acted in bad faith, thereby intending to gain an unconscionable advantage over the plaintiff. We find therefore that the instruction should have been given.

Serious objection is also made to plaintiff's instruction No. 7, which reads:

> "The court instructs the jury that the mining and removal of the coal by defendant company beyond and across the division line between plain-

tiff's and defendant companies' leased land, as located by the defendant's surveyors and engineers and shown on the map filed in evidence by the defendant, constituted and is in law a wilful trespass or trespasses, and as to such coal so mined and removed *and rendered unrecoverable or unminable by such trespass or trespasses* and damages resulting to plaintiff's property thereby, the measure of damages is the value of such coal so taken *and made unminable at the pit mouth* when mined, without taking from such value any cost or expense of mining, as well as also such if any damages to plaintiff's property as are proven with reasonable certainty by the evidence, and directly flow from such mining or directly caused thereby, therefore, if you believe from the evidence that defendant company, its agents or employees mined coal across or beyond said line and that the evidence shows with reasonable certainty the amount of coal so mined based upon a two thousand pound ton, and the value of such coal with reasonable certainty at the time or times it was mined and the amount of damages to plaintiff's property with reasonable certainty, your verdict will be for the plaintiff against the defendant company for the value of such coal at the pit mouth, without making any deductions for expense of mining and the damages to the property in addition not exceeding, however, the sum of $100,000.00.''

It will be noted that the same measure of damages is applied to the coal not mined but rendered unminable as is applied to that mined. This can not be the law, even where the trespass is wilful. This is not a case for exemplary or punitive damages, but one for compensation only. The theory upon which the plaintiff recovers for wilful, but not malicious trespass, as for the mining of coal, where he seeks to recover the value of the coal at the pit mouth is that the title to the coal remained in the plaintiff up to that time; that the conversion takes place when it is loaded on the lines of the common carrier, and plaintiff is entitled to the value as of the time of the conversion. The trespasser, when he seeks to reduce the amount of the recovery by the amount expended in mining the coal and bringing it to the pit mouth does so, not

on the theory that it became defendant's coal when it was severed from the vein, but on the ground that he has in good faith, in an honest belief that he had the right, expended labor and money on plaintiff's property, before it was converted, and therefore is entitled to the amount of his expenditures. But where coal is left unmined and made unminable there is no conversion. As to that plaintiff can recover only for the value in place, that is, in the coal vein. Of course, if the trespass were malicious, a different rule would prevail as respects punitive damages, but not for compensatory damages only. Scores of cases might be cited for this proposition. It is tacitly conceded that the instruction given is erroneous and we hold that it is. But for the refusal of defendant's instruction No. 1 quoted above we might require the plaintiff to reduce the amount of its claim by $1,500, the "damages" ascertained by the first verdict, and upon its doing so, affirm a judgment for the coal mined, or $25,056.00, but because of such refusal we must reverse the judgment. The verdict will be set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*