FRANK ATKINSON, *et al.*

*v.*

MAURICE JENNINGS, AND CARL ERICKSON AND FORREST BOWERS, TRADING AS ERICKSON AND BOWERS

(No. 12302)

Submitted September 15, 1964. Decided November 24, 1964.

*Charles V. Wehner, Thomas W. Lewis,* for appellants.

*Neil A. Reed, Milford L. Gibson, Frank B. Everhart,* for appellees.

BROWNING, JUDGE:

Plaintiffs, the owners of a tract of 34.89 acres of the Lower Freeport seam of coal, less one acre owned by the defendant, Jennings, instituted this action in the Circuit Court of Preston County on December 5, 1961, to recover damages for coal allegedly wrongfully removed by the defendants from said tract and for statutory damages of $41,000.00 for 82 alleged penetrations of the five-foot line. Defendant Jennings answered, denying that he had mined any coal belonging to plaintiffs without plaintiffs' consent, alleging that he had conducted only such mining operations permitted by a written lease from plaintiffs and that any other mining or removal of coal from the premises was done by others not his agents or employees. Defendants Erickson and Bowers, subsequently made parties defendant by order entered February 23, 1962, answered, interposing a plea of the statute of limitations and denying the allegations of the complaint.

The case was tried to a jury which returned a verdict in favor of plaintiffs and against all defendants in the amount of $12,000.00, and judgment was entered thereon. The defendants moved separately to set the judgment and verdict aside and award a new trial or enter judgment for defendants, which motions were granted on June 17, 1963, the Court entering judgment for all defendants upon its findings: ". . . (1) That there is no basis in the evidence for the Jury to arrive or find a verdict of $12,000.00. (2) That Maurice Jennings had no connection or part in the auger

mining operation and had no connection with Erickson and Bowers which would make him liable for their operation. (3) That the Plaintiffs did not carry the burden of establishing the boundary lines of the one acre reserved. The Surveyor stated that from his survey that until the boundary lines were established it was humanly impossible to determine what coal was augered belonging to Jennings and what coal belonged to the Atkinsons. The Northern boundary line, in particular, was not established in any manner."

Upon application of plaintiffs, this Court granted an appeal on January 13, 1964, the errors assigned in this Court relating to the above action of the trial court, the granting of four peremptory challenges to both defendants, the giving of certain instructions offered by defendants, and, in excluding certain testimony offered by plaintiffs.

On the question of whether the defendant Jennings was sufficiently connected with the augering operation so as to be liable therefor, the testimony is uncontradicted that Jennings, after completing stripping operations in 1957, did not return to the property until after the same had been backfilled in 1961; that he verbally leased his one acre reservation to the defendants, Erickson and Bowers, for augering operations, receiving a 10 cent per ton royalty on the coal produced thereby, referring Erickson and Bowers to one Glen Field, now deceased, for a location of the property. Erickson testified that Field designated the property as lying between the old mine opening and the westerly line without mentioning or designating the southern or northern lines thereof. To establish an agency relationship between Jennings and Erickson and Bowers, plaintiffs offered the testimony of Helen Dixon, the adjoining property owner to the west, who testified that she had leased her property to Jennings for stripping purposes only, and that thereafter the property had been augered, "by Mr. Erickson and his operators". By avowal the witness stated that she was subsequently paid for the augered coal by "Jerry Criss, Maurice Jennings' secretary". Mr. Jennings, in his testimony, denied engaging in the auger mining of coal and denied particularly any auger mining in the area involved or of the

Dixon property. He was questioned as to the payment to Dixon, an objection to the question was sustained, and, by avowal, it was stated by counsel for plaintiffs that if the witness had been permitted to answer, his answer would have been that "Jerry Criss did deliver a check to Helen Dixon for coal that had been augered . . ." on her property.

There is, therefore, no evidence in this record that the defendant Jennings at any time "by strip mining and by auger mining, . . . removed and marketed large quantities of coal" belonging to the plaintiffs, as alleged in the latter's complaint which was filed on the 5th day of December, 1961. On the contrary, the evidence shows without contradiction that the defendant Jennings verbally leased his one acre of coal, which constituted a part of the thirty-four acre tract of the plaintiffs, and that as a result of that lease the defendants Erickson and Bowers, by augering operations, removed the coal and paid therefor ten cents per ton royalty. There is no evidence in this record that the defendant Jennings, after completing the stripping operations on plaintiffs' thirty-four acre tract in 1957, observed, directed or in any other manner had any relationship to the operation of the defendants Erickson and Bowers, and was not again upon the property until after it had been backfilled in 1961. " 'The test of the relation between one having work done and the workman consists in the employer's right or lack of right to supervise the work. If that right exists, the relation is that of master and servant. If that right does not exist, the relation is that of employer and independent contractor.' *Greaser* v. *Appaline Oil Company,* 109 W. V. 397, 155 S. E. 170." Syl. Pt. 1, *Rogers* v. *Boyers,* 114 W. Va. 107, 170 S. E. 905. This is the rule observed by this Court from its beginning and the burden is upon a plaintiff to establish that relationship by a preponderance of the evidence. That burden these plaintiffs did not carry, and the trial court correctly set aside the verdict of the jury and entered judgment for the defendant Jennings upon the ground that the latter "had no connection or part in the auger mining operation and had no connection with Erickson and Bowers which would make him liable for their operation." As heretofore noted the plaintiffs, in an effort to establish the agency relationship

between Jennings, Erickson and Bowers offered the testimony of a witness who would have, if permitted to do so, testified that she was the owner of an adjoining tract of land, had leased her property to Jennings for stripping purposes only and that thereafter the property had been augered "by Mr. Erickson and his operators". The witness would have further testified, if permitted to do so, that she was subsequently paid for the augered coal by "Jerry Criss, Maurice Jennings' secretary". It is the view of this Court that the trial court properly excluded that testimony, and, even if it had been admissible, it would not have been sufficient to establish a master-servant or agency relationship between Jennings and the other defendants, Erickson and Bowers.

The controlling question is, of course, whether the plaintiffs proved the location of their property line with sufficient particularity to enable a verdict in their favor to stand. In the lease from Atkinson to Jennings for stripping purposes, dated December 30, 1955, reference is made to the one-acre reservation stating that ". . . the location of said (1) acre of coal so reserved to be designated by the mutual consent of the said Benjamin H. Field, the said Albert Field and Samuel Hale, and when so designated, to be laid down upon a map or plat of Field Coal Company, (Note this was subsequently done and can be located on said map), first party hereto (in said deed)." The Field Coal Company map was not introduced in evidence and its absence was not explained other than Mr. Atkinson's response in reply to a question as to whether he had ever had that map, "No sir, I do not." However, both Atkinson and the defendant Jennings testified that the one-acre reservation lay between an old opening, visible on the ground, and the westerly line of the 34 acre tract. The lease to Jennings describes the overall tract, the pertinent calls being a chestnut, ". . . thence with Barton Field's one line South 10° 41′ West 1523.30 feet to a point on the outcrop of the coal thence with the outcrop of the coal North 87° 11′ East 163.20′ to a stake; South 63° 22′ East 374.76 feet to a stake; South 61° 27′ East 401.83 feet to a stake; . . . ." These last calls would establish the southerly boundary of said one-acre reservation, except for the fact that Jennings, having completed his stripping opera-

tions in 1957, the "outcrop of coal" is gone and its location can no longer be determined with certainty.

Stiles, a surveyor, testifying for plaintiffs, stated that, from the old opening to the westerly line, 1.09 acres had been stripped and augering had then been done making a total of 2.1 acres of coal removed by both stripping and augering. He also testified that 2,412.90 tons of coal had been removed by augering, however, when asked whether the augered coal came from the Atkinson property, replied: "I do not believe that until the boundary line is settled, the question of it, as to the one acre, it would be humanly possible for anyone to tell how much came out of the Atkinson property and how much came out of the Jennings property." He further stated that he could not tell from his survey and inspection of the property what was Atkinson's and what was Jennings' reservation. On re-direct and re-cross the witness testified that he could determine the amount of coal taken from the Atkinson property on the basis of information supplied by Atkinson but that he could not determine the same from the record, there being no metes and bounds description of the reservation of record. The witness also prepared a map, which was introduced in evidence showing the southern boundary of the 34 acre tract, the westerly line and the old mine opening, and purportedly showing the areas stripped and augered to the north of the southerly line, and within the purported stripped area two power poles are shown on the map. The witness testified that if the outcrop line was north of these power poles, then his computation as to the area stripped would be reduced accordingly. Jennings, and the men employed by him in stripping the area, testified that the crop line was north of these power poles, and, in this location, not more than 30 feet distant from the present highwall. Also, it will be noted that in neither this map nor in Jennings' mine map, also introduced as an exhibit by plaintiffs, do the calls correspond to the description in the lease, or with each other, and there was no offer to explain these discrepancies. It was, of course, incumbent upon the plaintiffs to establish their boundary line by a preponderance of the evidence if they were to recover in this action. "Where reservations are contained in a deed it is not

only necessary for the party bearing the burden of going forward with the evidence with relation to such deed to show the exterior boundaries but the land excluded or reserved must be located by him as well." *Blain* v. *Woods,* 145 W. Va. 297, 115 S. E. 2d 88; *Stockton* v. *Morris,* 39 W. Va. 432, 19 S. E. 531.

It is the opinion of this Court that the trial court correctly set aside the verdict of the jury for the plaintiffs upon the ground that "Plaintiffs did not carry the burden of establishing the boundary lines of the one acre reserved. The Surveyor stated that from his survey that until the boundary lines were established it was humanly impossible to determine what coal was augered belonged to Jennings and what coal belonged to the Atkinsons. The Northern boundary line, in particular, was not established in any manner." In view of the decision upon this question, it is deemed unnecessary to discuss the other assignments of error.

The judgment of the Circuit Court of Preston County will be affirmed.

*Affirmed.*