310 S.E.2d 870

**Amond E. REYNOLDS, etc., and Maxine Reynolds, Executrix, etc.**

v.

**PARDEE & CURTIN LUMBER CO., Bemis Holding Co., Inc., and Peaker Run Coal Co.**

No. 15619.

Supreme Court of Appeals of West Virginia.

Dec. 15, 1983.

**806**

Richard W. Cardot, Elkins, for appellant.

E.V. Morton, Jr., Webster Springs, for Pardee & Curtin.

Talbott & Alsop and William W. Talbott, Webster Springs, for Bemis Holding and Peaker Run Coal.

HARSHBARGER, Justice.

Plaintiff and defendants cross-appeal from a Webster County order awarding a directed verdict of no liability to Pardee & Curtin Lumber Company, a $481,000 judgment against Bedford Coal Company (a now dissolved corporation) in favor of Reynolds' estate, finding liability against Bemis Holding Company and Peaker Run Coal Company but no damages, and a judgment without damages against Reynolds for bringing a fraudulent suit.

Pardee & Curtin Lumber Company (Pardee) owns a large tract of land in Webster County. In 1945, Pardee deeded two acres of coal located within a 500-acre Pardee tract to Dana Cogar who conveyed the coal to Reynolds in 1963. Reynolds mined these two acres from 1963 until 1968. He removed approximately 3,000 tons of coal, but claims he left somewhere around 13,000 tons. That coal is the subject of this dispute, carried on by his executrix.

In 1971, Pardee leased mineral rights in 250 acres of this 500-acre tract to Bedford Coal Company. Reynolds' two acres were reserved from this lease and identified on a plat. In 1973, an adjoining 250 acres were leased to Bedford by amending and incorporating by reference the 1971 lease. The amendment did not specifically mention Reynolds' property.

Bedford mined the tracts from 1971 to 1973, and there was testimony that Reynolds' coal was removed during this period. Bedford was dissolved in 1973 by the Kanawha County Circuit Court for failure to pay license fees. Bedford assigned its leases to Bemis Holding Company. (Royalties continued to pass from Bedford to Pardee, even after Bedford was dissolved.)

Bemis then contracted with Peaker Run Coal Company to mine the coal and it got a stripping permit for forty-seven acres, an area that included Reynolds' coal, but the permit did not reserve his two acres. Bemis paid royalties to Bedford and Pardee, from Peaker Run's operation.

Reynolds did not discover that his coal had been depleted until 1975. He sued Pardee & Curtin Lumber Company (lessor), Bedford Coal Company (lessee), Bemis Holding Company (sublessee), and Peaker Run Coal Company (contract miner). There was a jury trial. Pardee denied liability, pleading that a lessor is not liable for its lessee's, sublessee's or a sublessee's contract miner's torts. The trial court directed a verdict for Pardee after Reynolds' case-in-chief.

The court determined during pretrial proceedings that Bemis and Peaker Run had constructive notice of Reynolds' reservation, but instructed the jury that defendants had to have willfully and wrongfully mined the coal to entitle plaintiff to damages. Bedford Coal did not appear at trial. Bemis and Peaker Run denied liability, asserted the coal was mined by either Reynolds himself or Bedford, and counterclaimed against Reynolds, alleging a fraudulent suit against them intended only to

obtain a damage settlement. The court refused to instruct the jury on Reynolds' treble damage theory.

■ The jury verdict was confusing to say the least. It found that Bedford Coal was liable for $481,000 damages, plus interest, that Bemis and Peaker Run were both liable but owed no damages, and that Reynolds had filed a fraudulent suit but that he owed no damages.

Reynolds, with judgments of liability against Bemis and Peaker Run, seeks a new trial on damages only. He also claims the court erred in refusing his treble damage instruction, dismissing Pardee, and in refusing to rule that Peaker and Bemis were bad faith trespassers as a matter of law. Finally, he objects to the counterclaim.

Peaker and Bemis argue that they should have been directed out because Reynolds did not meet his burden of proof. Both sides cite other trial errors about testimony of witnesses, limitations on rebuttal, and pretrial orders.

### VERDICT

The jury verdict answered three inquiries:

We, the jury, find for the plaintiff, Amond E. Reynolds Estate and against the defendant, Bedford Coal Company, a corporation and assess the plaintiff's damages at $481,000 × 6% = 509,960.

[Date and signature of foreman]

We, the jury, find for the plaintiff, Amond E. Reynolds Estate and against the defendants, Bemis Holding Company, Inc., a corporation, and Peaker Run Coal Company, a corporation, and assess the plaintiff's damages at $ NONE.

[Date and signature of foreman]

We, the jury, find for the defendants Bemis Holding Company, Inc., a corporation, and Peaker Run Coal Company, a corporation, upon the defendant's counterclaim, and against the plaintiff,

Amond E. Reynolds Estate and Assess defendant's damages at $ NONE.

[Date and signature of foreman][1]

The confusion of this verdict is readily apparent to any reader. The court instructed the jury that:

### DEFENDANT'S INSTRUCTION NO. 2

The Court instructs the jury that one of the issues and questions before you is whether or not Peaker Run Coal Company mined within the boundary of the two acres allegedly owned by the plaintiff.

You are, therefore, instructed that the burden of proof is on the plaintiffs to show by a preponderance of the evidence that Peaker Run Coal Company, in fact, mined on their land, and unless you believe from the preponderance of the evidence in this case that Peaker Run Coal Company mined on the plaintiffs' two acres, then you cannot find a verdict against Peaker Run Coal Company or Bemis Holding Company.

### DEFENDANT'S INSTRUCTION NO. 3

The Court instructs the jury that damages are not presumed, nor may they be based upon speculation, but must be proven; and the burden is on the plaintiffs to prove by a preponderance of the evidence each item and element of damage claimed, and unless such item or element thus claimed is proven by a preponderance of the evidence, the plaintiffs cannot recover therefor.

And if the jury are uncertain as to whether any particular element of damage claimed was caused by the defendant, Peaker Run Coal Company, or if the damages complained of resulted from the taking of the plaintiffs' coal by Bedford Coal Company, then the plaintiffs cannot recover any damages against defendant Peaker Run Coal Company.

---

1. The jury also was given the option of finding for the defendant Bedford Coal and against Reynolds, and for Bemis Holding Company and Peaker Run Coal Company against Reynolds. These two possible verdicts were not signed or dated.

DEFENDANT'S INSTRUCTION NO. 4

The Court instructs the jury that where damages are claimed, such as the damage claimed by the plaintiffs in this case, and you believe from the evidence in this case that said damages may have resulted from one of two causes, that is to say, if you believe by a preponderance of the evidence in this case that the plaintiffs' coal was in fact, taken, then you are instructed that you cannot find a verdict against Peaker Run Coal Company or Bemis Holding Company if you believe from the evidence that is [sic] is as likely that the defendant, Bedford Coal Company is the party that, in fact, took the coal, or that you believe that it is just as likely from the evidence that Bedford Coal Company is the party that took the coal, then the plaintiffs must fail in their evidence as the plaintiffs' evidence must fail if it does not show that the damages were, in fact, caused by the defendant, Peaker Run Coal Company.

You are, therefore, instructed that the plaintiffs' case must also fail if it is just as probable that the damages were caused by Bedford Coal Company as by Peaker Run Coal Company, since the plaintiffs are bound to make out their case by a preponderance of the evidence.

and also included in his charge the following instructions:

[I]f you believe from a preponderance of the evidence that the defendants, Bedford Coal Company, Bemis Holding Company and Peaker Run Coal Company, or either one or more of them were not responsible or did not remove the coal from the two acre tract of minerals belonging to plaintiff Amond Reynolds, deceased, then you shall find for that defendant and against the plaintiffs.

The Court instructs the jury that if one consumes or converts to his own use property of another, the law implies an agreement on the part of the person so consuming or converting such property to pay to the owner the reasonable worth of said property. Therefore, if you find from a preponderance of the evidence that the defendants Bedford Coal Company or Bemis Holding Company, Inc. or Peaker Run Coal Company, or any one or more of them wrongfully and willfully mined and took possession of coal belonging to a Amond Reynolds, then you must find for the plaintiff and against the defendant or defendants who wrongfully and wilfully mined and took such coal, in the amount of the fair market value of the coal at the time and the place of the mining.

The Court instructs the jury that a willfull [sic] trespasser is one who not only intentionally commits the act of trespass but does so under such circumstances as would warrant the court or jury to find that he did it in bad faith.

Therefore, if you find, from a preponderance of the evidence, that the defendants Bedford Coal Company, Bemis Holding Company, Inc. and Peaker Run Coal Company, or either of them either trespassed upon plaintiff's land and removed coal from plaintiff's land and that such trespass was willful, then you shall find for the plaintiffs and against such defendant or defendants as shall have willfully trespassed and removed coal, and the measure of damages will be the value of the coal at the time and the place of demand without deductions for labor and expense expended by defendants in mining the coal.

The Court instructs the jury that where a trespass is willful the proper measure of damages is the value of the property at the time and place of demand, without deductions for labor and expense, but where such trespass is not willful, but is the result of mistake of fact, the measure of the plaintiff's damages is the value of the article after its severance, less proper expense of such severance.

■ While these instructions do not represent the entire jury charge, they do illustrate the inconsistency of the verdict with the instructions given the jury. If the jury found that Peaker Run did not mine coal on Reynolds' property, they were to find Peaker and Bemis not liable. Yet, the jury

found them liable, but owing no damages, even though they were instructed that if a party wrongfully takes another man's property and puts it to his own use, he is presumed to agree to pay its fair market value.

■ If Peaker Run and Bemis are liable as trespassers, it may be that the jury concluded that they were not willful or bad faith trespassers. Innocent trespassers are not exempt from damage liability, if damages were sustained.[2] If Peaker Run trespassed by mining Reynolds' Coal, then damages were necessarily incurred, even if not extensive. If Peaker Run did not mine Reynolds' coal, and Bedford Coal Company was the trespasser who converted Reynolds' coal to its own use, then the jury could not consistently with the law find Peaker and Bemis liable. Finally, Peaker and Bemis argued that Reynolds' suit was fraudulent and that he had mined his own coal or Bedford had, and he knew he did not have a cause of action against them. If the jury saw fit to grant Reynolds' estate over $480,000 damages, how can it be fairly shown that his suit was fraudulent? Having found Bemis and Peaker Run liable, how could it, consistently, find the suit against them to have been fraudulent?

■ When jury verdicts answering several questions have no logical internal consistency and do not comport with instructions, they will be reversed and the cause remanded for a new trial. *E.g., Hunt v. Ajax Coal Co.*, 85 W.Va. 736, 102 S.E. 603 (1920). *See also*, 76 Am.Jur.2d *Trial* § 1154, "That a verdict must be consistent appears to be a principle not often squarely decided, at least so far as civil actions are concerned, but rather one that has been generally assumed. (Footnote omitted.)"

## NOTICE

■ Reynolds' two acres of coal were clearly reserved in Pardee & Curtin's original lease to Bedford Coal Company. They had actual knowledge of the reservation. Bedford's second lease and sublease to

Bemis incorporated that reservation by reference, and that gave Bemis Holding Company and Peaker Run notice of Reynolds' reservation. Syllabus Point 5, *Simmons v. Simmons*, 85 W.Va. 25, 100 S.E. 743 (1919).

■ The evidence about which party or parties mined Reynolds' Coal is conflicting and a critical factual determination in this trial. If Bemis and Peaker prove, as they contend, that Reynolds or Bedford had mined the coal prior to their obtaining their lease and working on the site, they have not trespassed. Their constructive notice of the reservation cannot turn them into trespassers if they did not go upon his land and mine his coal. If it is proved that Peaker Run, and thus Bemis, mined coal on Reynolds' property, they must be found to be trespassers and liable for damages they inflicted upon Reynolds' estate. Whether their notice was actual or constructive is irrelevant to their status as trespassers.

## DAMAGES

■ Trespassers have been divided into two classes for purposes of damages: innocent and bad faith. Whether a trespass was willful or innocent turns on intent, Syllabus Point 10, *Pan Coal Co. v. Garland Pocahontas Coal Co.*, 97 W.Va. 368, 125 S.E. 226 (1924), and the type of notice may be considered as one of the factors in deciding the innocence of a trespass, but it is not singularly determinative.

■ A trespasser who does so intentionally or recklessly with intent to "take an unconscientious advantage of his victim" commits a willful or bad faith trespass and is liable for damages in a greater amount than an innocent trespasser. *Pan Coal, supra* 97 W.Va. at 381, 125 S.E. 226; *Petrelli v. West Virginia-Pittsburgh Coal Co.*, 86 W.Va. 607, 104 S.E. 103 (1920). The rules and definitions we set out in *Pan Coal* are the law today as much as sixty years ago:

---

**2.** The jury charge is confusing on this point. It requires the jury to find liability if the trespass was both wrongful and willful. Both are not required to be found for a plaintiff to be entitled to damages. *See* discussion, *infra*.

If the trespass be committed, not recklessly, but through inadvertence or mistake, or in good faith, under an honest belief that the trespasser was acting within his legal rights, it is an innocent trespass, and the measure of damages for the coal mined and carried away is the value of the coal in place, usually to be ascertained by finding its value at the pit-mouth or loading tipple and deducting therefrom the expense of mining and carrying it to the pit-mouth or tipple. But if the trespass be wilful, in an action for the value of the coal so mined, the measure of damages is its value at the pit-mouth or loading tipple, without deduction for mining and carrying it to the place of conversion.

Syllabus Point 8, *Pan Coal Co. v. Garland Pocahontas Coal Co., supra.*

*See also Bethlehem Steel Co. v. Shonk Land Co.,* 169 W.Va. 310, 288 S.E.2d 139 (1982).

### TREBLE DAMAGES

 The court was completely correct in refusing to instruct on treble damages. Reynolds argued that Code, 20–6D–25(b) applied. It does not. First of all, it was not enacted until 1980 and did not become effective until 1981—Reynolds claims to have been damaged in the early 1970's and filed his suit in 1975. He is not entitled to a statutory treble damages provision enacted six years after he started his suit. In addition, Code, 20–6D–1, *et seq.* applies to surface mining operations for minerals other than coal. Code, 20–6D–2(e).

### PARDEE & CURTIN'S LIABILITY

Did the court err in directing a verdict for Pardee & Curtin; is a lessor liable for tort damages caused by his lessee and subsequent lessees? We find that the trial court should have permitted a jury to decide the issue of Pardee & Curtin's liability. If the jury finds that Pardee & Curtin had knowledge of or acquiesced in its lessees' trespass or failed to adequately warn

its lessees about Reynolds' reservation, it can be held jointly accountable for the trespass on a common purpose theory. *O'Dell v. McKenzie,* 150 W.Va. 346, 145 S.E.2d 388 (1965); *Flanagan v. Gregory & Poole, Inc.,* 136 W.Va. 554, 67 S.E.2d 865 (1951).[3]

We reverse and remand for a new trial that includes Pardee & Curtin as a defendant, that permits the jury to decide which party or parties trespassed, if any, and the damages.

Reversed and remanded.

---

**3.** We find *Atkinson v. Jennings,* 149 W.Va. 101, 139 S.E.2d 119 (1964), cited as *contra* authority, inapposite. *Atkinson* turned on plaintiff's failure to clearly show boundaries of his reservation. *Atkinson*'s master-servant analysis should not defeat Reynolds' common purpose argument.