# CHARLESTON.

## MYLIUS v. RAINE-ANDREW LUMBER COMPANY.

### Submitted January 20, 1914.     Decided February 10, 1914.

1.  APPEAL AND ERROR—*Evidence—Description of Land—Extraneous Evidence.*

    When the description in a deed of the land conveyed by it is general, calling for adjacent lands as boundaries, and, read in the light of facts and circumstances disclosed by extraneous evidence, is ambiguous, the price paid for the land, its character and value and all other pertinent facts may be considered by the jury upon the inquiry for the intent of the parties, and its finding will not be disturbed unless it is against the decided weight of the evidence. (p. 676).

2.  BOUNDARIES—*Description of Land—Construction.*

    A call in the deed for a tract of land as one of its boundaries, designating it by the use of the names of the parties to the deed for the adjacent tract, as the A-B land, will not as matter of law, be extended over such tract to the A land, which it was the intention of the parties to said deed to convey, and made to include the A-B tract or a large part of it, because the A-B deed does not confer title to the land it purports, by the metes and bounds used in the

                        73 W. Va.

description, to convey, and does confer good title to the A land or would have done so, under an accurate description thereof; and facts and circumstances tending to show intent to limit it to the land as described in the deed, if sufficiently probative will ·sustain a verdict so limiting it.   (p. 676).

Error to Circuit Court, Randolph County.

Action by Charles E. Mylius against the Raine-Andrew Lumber Company.   Judgment for plaintiff, and defendant brings error.

<em>Affirmed.</em>

*Harding & Harding* and *H. G. Kump* and *Fred O. Blue,* for plaintiff in error.

*W. B. & E. L. Maxwell,* for defendant in error.

POFFENBARGER, JUDGE:

On this writ of error to the judgment obtained by. the plaintiff in the new trial awarded by the decision reported in 69 .W. Va., 346, the principal assignments of error are based upon the refusal of the court to set aside the verdict of the jury. For the general nature of the case, the issues involved and the evidence, referrence is made to the opinion delivered on the former writ of error.

The error respecting instructions for which the former judgment was reversed was not repeated upon the new trial. On the contrary, the court corrected it by two instructions given at the instance of the defendant and one at the instance of the plaintiff, all of which are applicable to the evidence of estoppel in pais.   The two given at the request of the defendant are concrete, referring expressly and directly to the evidence of representation and conduct on the part of the plaintiff, inconsistent with the right claimed under his declaration.   The one given at the request of the plaintiff is abstract in form, setting forth the legal elements of an estoppel, but it states the law correctly, and, read in connection with the instructions given for the defendant on the same subject, it was well calculated to aid the jury in reaching a proper conclusion upon the question to which it relates.   The five instructions given on the former trial and condemned by this court on account of the lack of qualification directing the

attention of the jury to the defendant's theory of estoppel, were given again on the new trial but with such a qualification. This defect having been cured, the court did not err in repeating them.

On the former hearing in this court, it was ascertained and declared that the plaintiff, Mylius, had been the owner, prior to his conveyance to the defendant, of all of Lot No. 14 of the Goff plat, except the portion thereof he had conveyed to Kupfer, and that it was competent for the jury, upon the evidence, to locate Lot No. 14 in accordance with the Goff plat and as it is claimed by the plaintiff. So located, it would embrace only a small portion of the land conveyed to Kupfer and nearly all of the land from which the defendant has cut the timber in question lies outside of the Kupfer tract and was owned by Mylius. But his deed, dated October 29, 1901, passed to the defendant title to a portion of Lot No. 14, as so located, lying outside of the Kupfer tract. This portion contained only six or eight acres, but the defendant claims his deed and statements and conduct combined preclude him from asserting title to any of it.

The description of the land conveyed by that deed is set forth in the former opinion, but its subject matter is much more clearly identified by the evidence adduced in the new trial than it was by the evidence in the preceding one. We now have the stream called for in it as Gladys Fork and the Shavers Mountain road located on the map and are able to see from the evidence just how much land plaintiff admits the defendant acquired by it. According to the contention of the plaintiff, it passes title to 115.3 acres and also conveys the timber on 190.42 acres of other land. Of the land so conveyed, 44.68 acres lies in Lot No. 12 of the Goff survey. If Lot No. 14 is located according to his contention, he obtained no title to any portion of Lot No. 12 by his deed for Lot No. 14, but, if it is located according to the contention of the defendant, he acquired title to that portion of Lot No. 12. His title to 70.62 acres, lying east of Glady's Fork and included by the deed as he applies it, was good in either event, and this he conveyed to the defendant. For the $1650.00 paid by the defendant in consideration of the conveyance, it received this

substantial quantity of land and timber under the interpretation put upon the deed by the plaintiff.

The description calls for the Kupfer land as the northern boundary and the Jennings-Car land as the eastern boundary. The Kupfer land was conveyed in accordance with the Sherwood plat and that was based upon the location of lots Nos. 11, 14, and 15 as indicated by the Maple corner, to which reference was made in the opinion in the former decision, and which would shift the location of these lots westward and southward in conformity with the contention of the defendant. So locating them, Sherwood surveyed, platted and divided them into seventeen smaller lots. Of these, Kupfer got Nos. 8, 9, 10, and 11, and enough of 7 and 12 to make 743 5/16 acres, lying in the northern portion of the plat, and Farnsworth took his portion in the extreme southern part thereof. Mylius retained lots numbers 4, 5, 6 and 14, portions of 7 and 12 and all or portions of 3 and 6 and possibly more. By this plat and conveyances made under it, Mylius, Kupfer and Farnsworth recognized the Maple corner and claimed in accordance therewith as far south as possible.

At the same time they manifested intent to claim as far north and east as possible, in accordance with the Goff plat, for, by a deed dated June 5th, 1893, and executed by Mylius, Charles Kupfer and Moritz Kupfer, his agent, and C. I. Farnsworth and Mary Jane Farnsworth, executor and executrix of the will of D. D. T. Farnsworth, deceased, there was conveyed to the Farnsworths 495½ acres, more or less, and they granted to Mylius and Kupfer all the right and interest of Farnsworth in and to all the residue of the land, supposed to be something over 1500 acres, the remainder of lots 11, 14 and 15 as laid off by David Goff, and for further description reference was made to the deed of Baker Brothers to Charles E. Mylius and others. From this deed of partition, there was excepted part of Lot No. 20 which was estimated at 535 acres. By an agreement dated March 1, 1891, Mylius had conveyed to Kupfer the 743 5/16 acre tract, composed of lots Nos. 8, 9, 10 and 11 and part of lots Nos. 7 and 12 of the Sherwood plat. By an agreement executed March 23, 1891, Kupfer released or assigned to Mylius in consideration of the conveyance made to him as aforesaid, all of his right and

title and any claim he might have "north of and outside of the line as laid down and surveyed by Sherwood, adjoining the Hare land, or any land which might have belonged or had formerly belonged to Baker Brothers," from whom they had obtained title to Lot No. 14. Further defining their purpose, Kupfer said : "I accept as my full share in the division of the Glady Fork side of the Baker land as per deed made the first day of March 1891 by the party of the second part, 743 and 5-16 acres, and also hereby accept as final the line made by Sherwood so as to settle any dispute hereafter between the line of the Baker land and the Hare land."

The location of the Kupfer land, called for in the deed from Mylius to the defendant as the northern boundary line, is thus immovably fixed, and lies west and south of the alleged trespass. According to the plaintiff's contention, the land he conveyed to the defendant extends no farther east than the Kupfer land. The Jennings-Carr land called for as the eastern boundary is a subject of controversy in the argument. As conveyed by the Carrs and others to the Jenningses, it extends westward to the Kupfer land and the Sherwood survey, covering more than one half of lot No. 14, but the Carrs got their land out of lots Nos. 13 and 23 of the Goff survey, adjoining lots Nos. 14 and 22 on the east, and, therefore, could not make a good title to any part of Lot No. 14, acquired by the Bakers under whom the plaintiff claims. Hence the Jennings-Carr land and the Carr land are not identical, and the call in the Mylius deed for the former is not a call for the latter. If it were, the lines of the Mylius deed might have to be so extended as to go to the western line of Lot No. 13, agreeably to a well known rule of construction. Mylius' deed to the defendant was subsequent in date to that from the Carrs to the Jenningses and there was then a known tract of land embraced in a deed from the Carrs to the Jenningses, affording a basis for designation thereof as Jennings-Carr land. Its western boundary line was coincident with the eastern line of the Sherwood survey and the defendant had contracted for the purchase thereof from the Jenningses. As it claimed under the Jennings contract to the Sherwood line, it likely had no purpose or intent to obtain anything east of that line by the deed from Mylius. Through its agent, it had

knowledge of the Sherwood survey, for he had seen the plat, and had declined, on behalf of his principal, an offer of Mylius to sell him land north and east of the Kupfer tract. He knew Mylius' claim of title had been segregated into two parts by the partition, one within the Sherwood survey and the other outside of it. Having declined to purchase the outside claim and taken a deed from Jenningses which covered it, he may well be deemed to have sought only land from the inside claim by his deed from Mylius.

These circumstances, bearing on the question of intent, are aided by others. If the Mylius conveyance were extended across Lot No. 14 to Lot No. 13 and also to the north line of Lot No. 14, so as to cover the trespasses and the land in controversy, the Kupfer land would then lie north of only a small corner of it and the real northern boundary would be Lot No. 22, and it would embrace more than three fourths of the 500 acres in Lot No. 14, covered by valuable timber, in addition to 70 acres of timbered land at the least and 190 acres of timber on the other land, all for the sum of $1,650.00, a palpably and flagrantly inadequate price.

Facts sufficient to make the description ambiguous have been disclosed. They let in the quantity and price of the land and other circumstances for ascertainment of the intention of the parties. *Barbour, Steadman and Herod* v. *Tompkins*, 58 W. Va. 572; *Mylius* v. *Raine-Andrew Co.* 69 W. Va. 346. And no legal impediment to a finding by the jury in favor of the plaintiff as to their intent is perceived.

Enough has been disclosed to show lack of conclusiveness in the statement and conduct of the plaintiff. His assertion of title north and east of the Kupfer tract was almost as clear as that to locations south and west of it. While claiming southward to the Maple location, he protested it was erroneous and not in harmony with the plat.

Perceiving no error in the judgment, we affirm it.

*Affirmed.*