## CHARLESTON.

REUBEN O. ZIRKLE *v.* THREE FORKS COAL COMPANY

(No. 5866)

Submitted April 19, 1927.    Decided May 10, 1927.

1.  APPEAL AND ERROR—BOUNDARIES—*Overruling Motion for Resurvey of Boundary, Not Made at First Term, After Filing Report and Map and Discovery of Surveyor's Alleged Incompetency, Held Not Abuse of Discretion (Code, c. 79, § 7).*

    Where there has been an order of survey on motion of defendant in an action against him for mining within five feet of the dividing property line in violation of Sec. 7, Chap. 79, Code, and after the order has been executed, and a survey, report and map filed in accordance therewith, defendant moves the court for recommitment to another surveyor because of discovered incompetency of the surveyor appointed, supporting his motion by affidavit, the material portions of which are flatly controverted by a counter-affidavit; and it appears that the motion was not made at the first term after the report and map were filed, and the alleged incompetency discovered, the appellate court is not justified in holding that the trial court, in overruling the motion, has acted arbitrarily and abused its discretion.    (p. 618).

    (Boundaries, 9 C. J. § 347.)

2.  APPEAL AND ERROR—BOUNDARIES—*Jury's Locating Boundary Line From Monument by Degree, Instead of Uncalled for Marked Line, on Conflicting Evidence Will Not be Disturbed; in Settling Boundary, on Conflicting Evidence, True Location of Line is for Jury.*

    When the monument at a beginning corner of a straight dividing line has been ascertained, and the title papers fix the course and distance from that point to another monu-

ment not found, thus forming the division line, a finding by
the jury which locates the line as called for by the degree,
instead of an uncalled for marked line near by, the purpose
and making of which marked line is in sharp dispute, will not
be disturbed. The question of the true location of the line is
clearly for the jury to determine.   (p. 622).

(Appeal and Error, 4 C. J. § 2836; Boundaries, 9 C. J. §§ 348,
349, 359.)

3.   SAME—On Conflicting Evidence as to Correctness of Location
of Mine Workings With Reference to Surface Lines, in
Boundary Dispute, Jury's Finding Will Not be Disturbed.

Where there is a sharp controversy as to the correctness
of the location of mine workings with reference to surface
lines, based upon the results reached by different methods
used by the surveyors in determining that fact, and from the
conflicting and unsatisfactory evidence the appellate court
cannot find as a matter of law that the result of one method
was right and the other wrong, the finding of the jury thereon
will not be disturbed.   (p. 624).

(Boundaries, 9 C. J. § 359.)

(NOTE:  Parenthetical references by Editors, C.  J.—Cyc. Not
part of syllabi.)

Error to Circuit Court, Randolph County.

Action of debt by Reuben O. Zirkle against the Three
Forks Coal Company. Judgment for plaintiff, and defendant
brings error.

*Affirmed.*

*Spears & Irons* and *C. W. Maxwell,* for plaintiff in error.
*H. G. Kump,* for defendant in error.

LIVELY, JUDGE:

This is an action of debt by the plaintiff Zirkle to recover
from the defendant, Three Forks Coal Company, the sum of
$2,500.00, representing the statutory penalties for five tres-
passes of defendant upon the adjoining coal lands of plaintiff
Zirkle, in violation of Sec. 7, Chap. 79, Code.   Defendant
admitted that it had made one trespass, and in settlement·
thereof paid the sum of $500.00 into court.   The establish-
ment of a boundary line was also in issue, as its location
affected one of the alleged trespasses.   Upon the submission

of the case to the jury, they returned a $2,000.00 verdict for the plaintiff. The jury also answered, in response to a special interrogatory submitted to them, that the disputed boundary line was line No. 1 as laid down on the trial map. The court, upon motion of defendant to set aside the verdict, held that trespasses Nos. 1 and 2, as shown upon the trial map, in fact constituted but one trespass, and required a remittitur of one trespass or the alternative of a new trial; whereupon plaintiff agreed to accept a remittitur of $500.00, and judgment was entered for $1,500.00. This writ followed.

The trial map here inserted will aid in vizualization of the questions presented.

The assignments of error relied upon for reversal are: (1) It was error for the court to refuse to recommit the cause to a surveyor skilled in mining engineering; (2) The jury having found that the monument designated in the title papers as the "two Maple sprouts", was located at the point as claimed by defendant, then as a matter of law the division line must be fixed to correspond to the actual marked line trees found on the ground (line No 5 on the map), and not according to the degree called for in the deed, thus eliminating one trespass; (3) The court erred in refusing to set aside the verdict as contrary to the law and the evidence; and (4) The court erred in the giving and refusing of instructions.

Did the court err in refusing to recommit the cause to a surveyor skilled in mining engineering? After the institution of this suit, on Nov. 22, 1924, upon the motion of the defendant Coal Company, the court ordered Jacob L. Goddin, County Surveyor for Randolph County, to go upon the lands in controversy and do such surveying as either party might require, and return to the court a report and a map showing the work done. Mr. Goddin executed the order of survey and filed his map and report on May 18, 1925; and on October 29, 1925, during the term of court at which the cause was set for trial, the defendant moved the court for a recommittal of the case to another surveyor, which motion was supported by the affidavit of C. W. Maxwell, and opposed by the affidavit of J. L. Goddin.

The affidavit of C. W. Maxwell (one of defendant's counsel) was to the effect that after the order of survey in this case had been entered, the affiant, representing the defendant, learned for the first time that J. L. Goddin, by his own admission, was not a practical mining engineer; that notwithstanding Goddin's lack of knowledge, he (Goddin) procured a Mr. Wilson and without notice to the defendant, went into the mine and purported to do surveying for the purpose of locating the workings in said mine, and later filed a map, which affiant is informed was incorrect and did not show the true status as to the conditions existing in the mine; that later the defendant secured the services of a practical engineer,

a Mr. Tillson, to assist Mr. Goddin in making an accurrate survey of said mine workings; that affiant was informed that Goddin agreed to go over with Tillson and check up by the proper methods of calculating the survey within said mine, so as to accurately locate the workings therein upon said map with respect to the boundary line of defendant, and then file his report and map, but that a short time ago, Goddin refused to check with Tillson, but attempted to make and file his map and report, and attempted to show on this map the location of the workings within the coal mine, but the map shows no calls and distances in regard to the same and said map and report are wholly unintelligible for the purpose of ascertaining whether there has been any trespass upon the lands of the plaintiff. The affiant further said that in order to determine the rights of the parties to this controversy, and especially since Goddin refused to check with a competent mining engineer the work done inside the mine, it was necessary that an accurate survey should be made by a competent mining engineer who should be directed to do such surveying as might be required by the parties, make a map and report, and do such surface surveying as will tie up the work in the mine with the boundary lines of the respective parties.

J. L. Goddin's affidavit was to the effect that before executing the order of survey, the affiant gave the parties notice, and went upon the ground at a time fixed by agreement of the parties in interest, and the work continued from day to day and from time to time, with the full knowledge of all the parties, until the work was completed, and no work was done in executing the order of survey without notice to and knowledge of, the parties in interest; that although the affiant is not a practical mining engineer, the location of a mine under ground is such as may be done by any competent land surveyor, and the work of locating the mine in this case was not technical and the same was located and surveyed by affiant assisted by the representatives of both parties to this suit, and no objection was made or raised upon the ground as to the manner in which the work was being done nor as to its accuracy; that the method of proceeding was agreed upon

between the parties; that after the affiant had done all of the work of surveying required by either party upon the surface, he proceeded to execute the written direction of plaintiff to survey the mine and lay the same down upon his map; that A. J. Crickard representative of the defendant, refused to go into the mine and affiant proceeded with the work of surveying the mine, assisted by Ellsworth Wilson, a practical mining engineer; that afterwards R. O. Tillson, the mining engineer of defendant, appeared upon the ground and requested that the mine be again surveyed; that thereupon affiant went into the mine with Tillson and re-surveyed the same, said Tillson and affiant both carefully reading the instrument and observing the measurements, and that the mine survey as made by affiant and said Tillson is laid down upon the map in this case and no part of the work done by affiant and said Wilson is laid down upon the map or reported in this case, although this work is in accord with the work done by affiant and Tillson, subject to some minor corrections in measurement; that after affiant and Tillson had surveyed the mine he and Tillson proceeded to survey and locate the mine upon the surface, and in doing such work said A. J. Crickard, representative of the defendant, and J. R. Purkey, representative of the plaintiff, carried the chain and affiant and said Tillson operated the instrument and checked the work; that both said Crickard and Purkey are surveyors of many years' experience and have both acted in the capacity of County Surveyor of Randolph County; that after locating the mine upon the surface, said A. J. Crickard, representative of the defendant, demanded additional surveying upon the surface, beginning on the opposite side of the river, which was done and is shown in affiant's report and upon his map; that thereupon said Crickard and Tillson conferred with each other, and said Tillson demanded that he be permitted to run a random line in order to check his work in the mine with the line shown upon the map running from the gum N. 60 45 E. to the hemlock stump at the river—designated as line No. 2 upon the map—, which was done; that it is not true that affiant refused to check with said Tillson so as to accurately

locate the workings within said mine with respect to the boundary lines of the parties; that it is true that about the time of the beginning of this term of court Tillson requested affiant to go to Buckhannon to Tillson's office to there re-check the work and survey which affiant declined to do, but out of courtesy to Tillson offered to re-check the work at his office and that Tillson would re-check the same and they would compare their work, but owing to the fact that affiant was busy and court at hand it would be necessary for affiant to do his work at night, and that thereupon said Tillson declined to re-check the work in that way; that affiant requested both the plaintiff and defendant to state whether or not they desired any additional work done in executing said order of survey and neither party required or requested further work to be done, and thereupon affiant made up his report and map herein and the same was regularly filed in the office of the clerk of the court on May 18, 1925; that it is true as appears from affiant's map filed herein, that the courses and distances of the mine survey are not laid down thereon, but affiant was not requested to lay down such courses and distances and affiant has the same in his field notes and can promptly lay the same down upon the map if required.

In determining the correctness of the court's ruling in refusing to recommit the cause to a surveyor skilled in mining engineering, we will place ourselves in the position of the trial court and will consider only the evidence which the court had before it at the time the motion was made—the map and report of Goddin and the statements contained in the two affidavits above set out—, and the status of the case at the time the motion was made. In arguing this point counsel have not confined themselves to the evidence heard in support of and in opposition to the motion, but have injected facts subsequently brought out upon the trial of the case. On such a motion, it rests within the sound judicial discretion of the trial court to say whether or not under the circumstances of the particular case the necessity exists for the entry of another order of survey; and it is not apparent that in the instant case the court has abused its discretion in refusing to

grant the motion  It is true that the affidavits disclose that Goddin was not a practical mining engineer, but it is stated that the location of a mine underground is such as may be done by any competent land surveyor, and that the work of locating the mine in this case was not technical and it was located and surveyed by Goddin, assisted by representatives of both parties to this suit.  Explanation is made of Goddin's failure to check the work with Tillson.  Goddin states in his affidavit that the method of proceeding was agreed upon between the parties.  Inaccuracies in Goddin's report and map, which would warrant a resubmission of the cause to another surveyor were not pointed out to the court in Maxwell's affidavit.  Moreover, it appears that Goddin began his survey after due notice on January 29, 1925; that additional surveys required by defendant were made, in which its expert mining engineer participated; and that Goddin made up and filed his report and map on May 18, 1925.  One regular term intervened before the motion for a new survey by another surveyor was made.  It also appears that Goddin's alleged incompetency was discovered when he began to survey, and was confirmed in the opinion of defendant when the map and report were filed.  The motion was dilatory in character, and the court may well have concluded that it was not seasonably made.

We now come to the second assignment of error—the location of the disputed boundary line running from the two Maple sprouts N. 59 E. 181 poles to a stake (not found) in line No. 2.  It is contended by counsel for defendant that as the two Maple sprouts were located at the point claimed by defendant, (the south-eastern corner of the Sloan lot), then as a matter of law the division line must be fixed to correspond with the actual marked line found on the ground (line No. 5 on the map), and not according to the degree called for in the deed (line No. 1).  This is material, because if defendant's theory should be adopted, trespass No. 5 as shown on the trial map would be eliminated.  The jury, following the degree called for in the deed, found line No. 1 to be the true boundary.

Although there is a conflict in the testimony as to the character and formation of the line of marked trees, the preponderance of the evidence probably shows there is such a line, although it is possibly somewhat irregular in formation (it is shown to be a straight line on the map), and it extends beyond the boundary line forming the western limits of the tract out of which the plaintiff's and defendant's tracts were taken. It is uncertain by whom and at what time this line was established, and what factors induced its creation. The annulations on blocks cut from the trees on this line showed a number of them to be thirty-nine years of age according to some of the witnesses, and forty or forty-one according to others. Thirty-nine years had passed since the execution of plaintiff's deed, at the time of the trial. Plaintiff claimed this line was not run when he purchased his property; while defendant introduced evidence tending to show that it had been run at that time. The witnesses differed as to whether the marks on these trees were made by a surveyor. There was some evidence that less than a year after the date of plaintiff's deed a fence had been built in the proximity of part of this line. The fence was built near that portion of line No. 5 where it is practically the same as line No. 1, but as the higher ground was reached, where line No. 5 and line No. 1 diverge, the evidence is not so clear as to the location of the fence.

The marked line as claimed by defendant was not called for in the title papers, and we held in *Colliery Co.* v. *Campbell,* 72 W. Va. 449, that, ''A line designated in a deed or other muniment of title by its course and distance only must yield to an inconsistent marked line, run as the line intended by the parties, but if the deed calls for a line by monuments as well as by courses and distances, such marked line not referred to in the deed must be ignored, if the monuments called for are ascertainable.'' In the instant case the jury have determined the location of one of the two monuments called for on this line—the two Maple sprouts—, and no question is raised here as to the correctness of their finding on this point; but the parties differ as to the location of the monument at the

other end of the line.  Defendant contends that in such a case
the marked line should control the location of the disputed
boundary beginning at the two Maple sprouts, instead of the
degree called for in the title papers.  We do not think it can
be said as a matter of law that the evidence so clearly estab-
lishes the status of the marked line as to make it the con-
trolling factor in the determination of the location of the dis-
puted line, and this being true, the case falls within the prin-
ciples enunciated in *Wilson* v. *McCoy,* 86 W. Va. 103, in
which it was said: "Where a deed calls for a line between
monuments as well as by course and distance, one of which
monuments is standing well marked and unquestioned, while
the other has long since disappeared and its location is not
definitely ascertained, and the surveyors differ in their loca-
tions of the latter, with the result that recent surveys pur-
porting to represent such line materially vary, each being
supported by measurements to and from other known monu-
ments, thereby enveloping its true location in doubt and un-
certainty, the solution of the conflict so presented is pecu-
liarly within the province of a jury, and its finding, in the
absence of a clear preponderance of evidence to the contrary
and of prejudicial error during the course of the trial, cannot
properly be disturbed by the trial court upon motion or writ
of error from this court."

It is contended by counsel for defendant Coal Company
that the verdict is contrary to the law and the evidence, be-
cause it is clearly established that Goddin was incompetent to
make a proper mining survey; that he did not use an approved
method in locating the alleged trespasses, and that the evi-
dence of Tillson clearly shows Goddin's survey and map are
erroneous.

It appears that Goddin, County Surveyor of Randolph
County, upon the motion of defendant, was appointed by the
court to execute an order of survey with reference to the
property in question; that he went upon the ground in com-
pliance with the court's order and made the required survey;
that as far as the boundary lines on the surface were con-
cerned (with the possible exception of one line), the plaintiff

and defendant were each represented by a surveyor when these lines were run; that there is no controversy as to the establishment of the boundary lines on the surface, with the exception of the disputed line heretofore mentioned; that the survey of the mine workings and their location on the surface was done by Goddin and defendant's mining engineer, Tillson, they being assisted on the surface by Crickard, a surveyor representing the defendant, and by Purkey, a surveyor representing the plaintiff; that Tillson assisted by Goddin ran a random line on the surface to be used by Tillson in checking his (Tillson's work); that Goddin and Tillson checked their field notes as to the surveying done by them together in the mine and on the surface. There is a conflict in the evidence as to Goddin's agreement to check the calculations to be made by each, based on the data contained in their field notes. Tillson says Goddin agreed to check the same, and Goddin says he agreed to check only the random line run for Tillson's benefit. The check-up was never made. The fact is brought out in the evidence that Goddin was not a practical mining engineer, and that this was the first time he had ever attempted to locate on the surface a corresponding point in the mine, but there is evidence to the effect that it is not necessary to be a practical mining engineer to do such work; that such surveying is not of a technical nature, and can be done satisfactorily by a competent land surveyor.

There is quite a controversy as to the competency of the method employed by Goddin in locating the workings in the mine at a corresponding place on the surface. In doing their surveying in this case Goddin and Tillson used an open end survey in the mine and on the surface. Goddin says this was the method agreed upon. Tillson says he protested against the use of the same. The surveys in the mine and on the surface were made by Goddin and Tillson acting in conjunction, the latter reading the instrument in the mine and Goddin checking the angles. However, Tillson ran a circuit both in the mine and on the surface, and "tied up" the open-end survey thus made, and he located the workings in the mine at corresponding points on the surface by means of "co-ordi-

nate values''. Goddin did not "tie up", either in the mine survey or in locating the points in the mine at corresponding places on the surface.

The evidence tended to show that either Tillson's method or that employed by Goddin, was a competent method if correctly used, although Tillson's method was probably the better one because of its quickness and greater accuracy, and consequently is that most generally approved by engineers. As testified to by a witness for the defendant, J. B. Davies, Goddin's method, "if done accurate, must be correct." Goddin's failure to use the same method employed by Tillson does not establish the fact that the verdict is contrary to the law and the evidence.

It is further contended by defendant that the verdict is contrary to the law and evidence because the results of the work done by Goddin and Tillson make it apparent that the former's survey and map are wrong. It is pointed out that Tillson checked his work by running a random line and "tying up", and according to his calculations Goddin's survey on the ground didn't "tie up" by eighteen feet, and that if Tillson is correct in that statement, then only one trespass should be shown on the trial map. Wilson, a mining engineer of many years experience, says he and Goddin checked up their work with each other, and that he believes Goddin's map and report reflect the true situation as to the existence of the trespasses. His method of checking up this work with Goddin was probably not entirely satisfactory, because he did not have his field notes or a complete map with him at the time, but he did have a sketch which he had made, and he says Goddin's field notes were the same as his, they both taking the same notes.

On the other hand, plaintiff contends that the distance from the point of crossing of the main line that Goddin and Tillson ran with the back line leading from the Gum to the Hemlock stump, to the stake designated at the intersection of line No. 1 with line No. 2, which distance Tillson says he did not measure, but which was measured, according to Goddin, and found to be 62½ feet, scales 78 feet on Tillson's

map. Tillson says that it was not necessary to know this distance, ''because I have a fixed point here at the gum corner, have another fixed corner here, and have a straight line connection.'' It is Goddin's theory that this mistake in the distance if corrected would result in the drawing of a portion of the mine workings nearer to the boundary line, but he was not prepared to say how much closer they would be drawn. The science of mathematics is exact, but the different results reached in its application by different surveyors, is sometimes startling to the layman, when applied to what appears to be an ordinary survey. *Warren* v. *Boggs,* 90 W. Va. 330. We do not have either the field notes of Tillson or Goddin to aid us in determing the correctness of these alleged errors; and with the evidence in this conflicting and unsatisfactory state, we do not feel that we would be warranted in saying that the verdict is so plainly against the decided weight and preponderance of the conflicting and unsatisfactory evidence as to make the rendition of the verdict palpably unjust, and render it necessary to set the verdict aside as contrary to the law and the evidence.

Defendant also contends that the court erred in refusing to give defendant's instructions Nos. 1 and 2½, and in giving plaintiff's instructions Nos. 5, 6, 7 and 10. Defendant's instruction No. 1, a peremptory instruction to find for defendant, was properly refused. Likewise defendant's instruction No. 2½, which required the jury to locate the disputed boundary line at the point claimed by defendant, was properly refused. Plaintiff's instructions Nos. 5, 6, 7 and 10 related to the establishment of the disputed boundary as line No. 4 on the map. Even if it be granted that the giving of these instructions was error, it is not apparent that the defendant was prejudiced thereby, for the jury did not locate the division line as claimed by the plaintiff.

Perceiving no reversible error, the judgment of the trial court will be affirmed.

*Affirmed.*