PHILIP O. FAULKNER *v.* H. P. THORN

(No. 8795)

Submitted October 18, 1938. Decided November 10, 1938.

J. O. *Henson*, J. M. *Woods* and *Price, Smith & Spilman*, for appellant.

L. I. *Rice* and *Emmert & Rice*, for appellee.

HATCHER, JUDGE:

This is a suit to establish an easement, the use of which defendant was impeding. The circuit court dismissed the bill and in response to the answer, established a division line between the parties. In passing, it is noted that equity has no independent jurisdiction to establish a boundary line and could do so in this cause only as an incident to the determination of the alleged easement. *Carberry* v. *Rr. Co.*, 44 W. Va. 260, 28 S. E. 694; 9 C. J., subject Boundaries, sec. 281.

Plaintiff's farm is rectangular and is adjoined on its entire southern line by defendant's farm. Along this line is a lane (more than four thousand feet in length), extending from a highway called the Ridge Road on the east of the two farms to a highway called the Mountain Road on their west. Neither the time, manner nor purpose of establishing this lane is within the memory of the living. Several aged witnesses had known and used it when children. It was then "single track" and fenced on both sides its entire length. It was then used freely by everyone desiring to do so. From that time until this, first the western and later the eastern part has been used constantly by the owners of defendant's farm. During that period the owners of plaintiff's farm have not needed to use the lane, and have not used it to any extent except that for the last eleven years, plaintiff himself has driven over the eastern part weekly. The western part has fallen into disuse, though a well-defined foot

and bridle path still exists. The lane fence on plaintiff's side has been maintained constantly its entire length by the owners of his farm, except near the Ridge Road where now only fence posts stand. The lane fence on defendant's side was maintained constantly its entire length by owners of his farm until within the last few decades. About 1910 an owner destroyed the section of his fence near the Ridge Road. Other sections have fallen down.

Plaintiff inherited his farm from his grandfather, who secured a deed thereto in 1847. The deed called for stones at each of the four corners. None of those stones can now be found, except the one at the northeast corner (and admittedly it was moved by a third party several feet east of its original location). The east line of the deed, when run from this stone the distance called for, lacks 5.4 feet of reaching the line of plaintiff's fence posts at the junction of the lane and Ridge Road. A stone reputed to have been a cornerstone was observed by some of the older witnesses in the lane where it joined the Mountain Road. While the stone is gone, there is now a post (or several massed posts) on the west side of the Mountain Road about opposite where the stone was lodged, which the plaintiff claims, without controversy, as his southwest corner. The circuit court, disregarding the course of the southern line in the deed of 1847, decreed that the line should run from the corner at the Mountain Road to a point in the center of the Ridge Road on a line projected eastwardly from plaintiff's lane fence posts. If the course and distance in the deed be followed, this line would terminate on defendant's farm a few feet south of the lane as originally established. This terminus would be beyond the call of the eastern line when run from the stone at the northeast corner. But when the course of one line and the distance of another do not accord, there is no general rule requiring that the course be disregarded. *Warren v. Boggs,* 90 W. Va. 329, 335-6, 111 S. E. 331; 9 C. J., subject Boundaries, sec. 161. The circuit court's disre-

gard of the course is attributed presumably to the impression recited in the final decree that plaintiff's lane fence at and near the Ridge Road was "the long established location of the division fence." As heretofore stated, there is no evidence of why the lane was established and the fences built. No witness testified that plaintiff or his predecessors in title ever admitted or considered their lane fence as a division fence. No witness testified that any predecessor in title of defendant ever claimed that plaintiff's lane fence was a division fence. On the contrary, witness C. H. Rickard (aged eighty years), whose father and grandfather had owned defendant's farm for many years, and who himself had occupied it for a period of twenty-one years prior to defendant's purchase, testified that he never knew where the division line ran, saying "There was no difference (about it). The lane was there. We kept up the fence on one side and whoever was on the other place (plaintiff's) kept it up on the other side." Consequently, the impression that plaintiff's lane fence is a long established division fence is, in our opinion, without substantial support.

The decision in *Harriman* v. *Brown* (1837), 35 Va. 697, 8 Leigh 697, 707, *et seq.* established beyond question the rule in the Virginias that the location of a cornerstone may be proved by reputation. "Questions of boundary", says the opinion, "after the lapse of many years become of necessity questions of hearsay and reputation. For boundaries are artificial, arbitrary, and often perishable; and when a generation or two have passed away, they cannot be established by the testimony of eye witnesses. In such cases, therefore, it becomes necessary to look to reputation * * * of the former existence and actual locality of an artificial boundary." Accord: 8 Am. Jur., Boundaries, Sec. 93; 11 C. J. S. *idem,* sec. 106. Wherefore, neither course nor distance need be preferred here because of the following undisputed evidence: Formerly there was a bank about three feet high on the southern side of the lane, where it joined the Ridge Road.

In that bank, a stone had been lodged. No witness, of his own knowledge, knew when this had been done or for what purpose. But Mr. Rickard and two other elderly men who had been acquainted with this stone, testified, respectively, that "People said it was a cornerstone"; "We were always told it was a cornerstone"; and it "was said to be a cornerstone." Defendant admitted that about 1912 he had this bank removed (to facilitate the turn from the lane into the Ridge Road). The stone in question has not been seen by the witnesses since, and defendant did not account for it. There is nothing whatsoever in the record to discredit the testimony regarding this stone. It was but a few feet beyond the distance called for on plaintiff's eastern line and was near the course called for from the southwestern corner to the southeastern—nearer, in fact, than the corner established by the circuit court. From all which, we cannot escape the conviction that this stone has been sufficiently identified by reputation and location as the southeastern corner of plaintiff's land. See *Dean* v. *Given,* 111 W. Va. 430, 432, 162 S. E. 489. That corner being within the lane at the Ridge Road and the southwestern corner being opposite the entrance of the lane into the Mountain Road, a line between the corners will, for the most part, be within the lane. These and other circumstances herein manifest that a remote predecessor in plaintiff's title contributed a portion of his land to this lane. The record does not disclose the local conditions which existed prior to the memory of such witnesses as Mr. Rickard, and the reason for this contribution is not apparent. But the reason is not material. It is equally manifest that a remote predecessor in defendant's title made a like contribution. The lane, opened jointly, cannot be closed severally.

The decree of the circuit court is reversed, and the cause is remanded that the lane, as originally established, may be precisely located by metes and bounds or in

some other definite way. When so located, the defendant will be enjoined from obstructing it in accordance with the prayer of the bill.

*Reversed and remanded.*