Ira E. Blain, *et al.*

*v.*

W. H. Woods

(No. 11089)

Submitted April 19, 1960.     Decided June 14, 1960.

298

*Horace S. Meldahl,* for plaintiff in error.

*Jackson, Kelly, Holt & O'Farrell, David D. Johnson, William H. Rardin,* for defendants in error.

BERRY, JUDGE:

This is a statutory proceeding under Code, 55-4-31, as amended, to establish a boundary line between property located in Mason County, Clendenin District, West Virginia, owned by the petitioners or plaintiffs, Ira E. Blain and Mattie A. Blain, and the defendant or respondent, W. H. Woods. This case was tried in the Circuit Court of Mason County, West Virginia, and at the conclusion of all the evidence the trial court

directed a verdict in favor of the plaintiffs and entered final judgment thereon on May 5, 1959, to which judgment this Court granted a writ of error and supersedeas on October 5, 1959.

The parties received their lands from common grantors, Randall M. Hogsett and Edna Hogsett, his wife. The first conveyance was made from the Hogsetts to the Blains on July 28, 1944, and four years later, on June 10, 1948, the Hogsetts conveyed to Woods a tract of land which was adjacent to the tract conveyed by them to the Blains. The deed from the Hogsetts to the Blains in 1944 was not by courses other than by cardinal points of the compass, although monuments and distances found and fixed by the parties were used and the tract conveyed consisted of about 5 acres. The deed from the Hogsetts to Woods in 1948 was by courses and distances with some monuments and contained about 80½ acres but the call for the line in question in this proceeding is not ascertainable by said deed as a separate line due to the fact that it was apparently involved in other lands not adjacent to the land of the Blains. However, the northernmost line of part of the Blain tract which is adjacent to land conveyed to Woods does have a call in the deed from the Hogsetts to Woods in 1948, which is ascertainable, and is as follows: "S. 88° E. passing over an iron stake set on top of the bank of the road and with the land of Ira Blain (at one time a part of this tract) and passing just northerly of a large sycamore tree near the bank of a small creek, in all 34 poles to northwest corner of the Newman land, same being a corner to Ira Blain; * * * ".

The point of beginning in the deed from the Hogsetts to the Blains, a locust post on the eastern line of the Baltimore and Ohio Railway Company's right of way, is not in controversy, both parties being in agreement as to the location of this monument. The plaintiffs contend that the line in question in this litigation as surveyed starts at this monument and runs north 82° E. 297′ to an iron pin which was placed

in the ground as a monument or marker by Hogsett and Blain at the time the conveyance was made in 1944, but Woods claims that the line in question runs from the agreed monument with a hedge to a point about 43 feet south of the iron pin or stake placed in the ground by Hogsett and Blain. This controversy involves a wedge shaped parcel of land which would be the property of the plaintiffs if the boundary line in question is where Blain contends it is located, but would be the property of Woods if it is where he contends the line in question is located. The question of adverse possession does not arise in this case because both parties apparently mowed or cut the grass on the area involved and no one has lived in the house located on defendant's property since 1955.

It might be well to state here that the hedge along which Woods contends the line in question runs was not located in its present position at the time the Blains obtained their deed from the Hogsetts in 1944, but was located south of a garage which was later converted into a dwelling, at which time Blain had an old colored man remove the hedge to the north side of the garage in connection with converting it into a dwelling.

Before the trial of this case Blain had an engineer survey his property. This engineer later testified at the trial and stated that he started his survey at the second monument in the deed from the Hogsetts to the Blains in 1944, being a stake corner in the J. L. Buskirk line and he ran the lines called for in said deed in reverse, by courses and distances, and in this survey located most of the monuments called for in said deed and located the line in question in this controversy as being N. 82° E. 297' between the point of beginning in the deed from the Hogsetts to the Blains and the iron pin placed there by them at the time the deed was made. The original deed called for 18 rods between these points which was the exact distance found by the surveyor. The next call found by survey was N. 11° 10 minutes W. 264' to a corner

post along the state road right of way, which corresponds with the original deed. The next line, the northernmost line of the Blain property is S. 88° 40 minutes E. and runs north of a sycamore tree 558' to a fence corner. The original deed called for 32 rods and the distance measured by the surveyor is about 20' farther than that called for in the original deed but it ended at the fence corner.

It is interesting to note that this S. 88° 40' E. line is almost the exact call in the deed from the Hogsetts to Woods made in 1948 and which Woods admits was his line at that time.

The other lines run by plaintiffs' surveyor conform closely to the original deed made in 1944 and close at the point of beginning. The fact that plaintiffs' surveyor ran the lines in reverse seems to be a point of contention in the brief filed on behalf of Woods, but of course it would make no difference which way the lines were run so long as the calls conform with the original deed. .

A contention is also made with regard to an old military line being mentioned in the deed from the Hogsetts to the Blains in 1944, it apparently being the contention of the defendant that this old military line was several miles away. However, it should be noted that the military line is also referred to in the deed from Randall M. Hogsett, Jr. and Myrtle Hogsett, his wife, to W. H. Woods in 1953, and from Charles J. Hyer, Special Commissioner to W. H. Woods in 1955, which apparently referred to property at about the same location because each one reserved from the conveyances the 5 acre tract conveyed to the Blains by Hogsett, Sr. in 1944.

The defendant Woods also had a surveyor survey the property of the plaintiffs and the only differences in the two surveys are in a northernmost line of the Blain property, which is called for as S. 88° E. 34 poles in the Woods deed of 1948 and in the line in question which Woods' surveyor fixes along

the hedge where Woods claims the line is located. In order to locate the line in question along the hedge where Woods claims it is, it was necessary for his surveyor to run a line *south* of the sycamore tree from a point at the fence corner on the eastern end to the western end of the northernmost line of the Blain property; but this northernmost line was definitely fixed in the deed to Woods in 1948 as *north* of the sycamore tree. This line, as now claimed by Woods in this suit, terminates at a point on the western end over 40' south of the western corner claimed by Blain by existence of his deed of 1944 and fixed by a course of S. 88° E. in Woods deed of 1948. This dropping of the line was done in order to make the line conform to the hedge line claimed by Woods which makes this line extend about 40' south of the iron pin and several feet longer than the line in question claimed by Blain and as indicated in his deed from the Hogsetts in 1944. The distance from the western corner of the northernmost line of the Blain property to the iron pin is 16 rods and of course it is about the same distance from where Woods' surveyor measured it to the point opposite the hedge line. Woods' surveyor stated that the only reason he brought the line down in the manner he did, that is, about 40 feet south of the monument, was to make it follow the hedge fence which is the line claimed by Woods.

It should be noted here that if the line in question is where Woods claims it is Blain would not only lose a wedge shaped parcel of land at that point but would also lose a larger wedge shaped parcel of land at the northernmost part of his tract where the line was never in question, but was admitted by Woods to be his line as shown in the deed to him by the Hogsetts in 1948.

The immediate controversy arose in 1958 when the plaintiffs erected a fence where they claim the line in controversy runs, that is, from the monument at the point of the beginning in the Blain deed dated

in 1944 to the iron pin which lies N. 82° E. 297' from the beginning monument. The defendant tore this fence down. However, several years prior to that time the plaintiffs had put a fence on the northernmost line described as S. 88° E. in the defendant's deed of 1948 and not only did the defendant not question the placing of this fence on said line but paid for half the cost for putting it there. When the plaintiffs had the 1944 deed recorded in the county clerk's office the eastern boundary line was omitted from the description. This error was discovered apparently by the surveyor of plaintiffs after this controversy arose and the plaintiffs then had the deed re-recorded with the omitted line included in the second recordation. The defendant's surveyor used a copy of the deed which was erroneously recorded in making his survey and could not complete it because it did not close. No objections were made with regard to this matter by the defendant during the trial of this case and the correct description was used by the defendant's surveyor in order to complete his survey, and was also used by the defendant's attorney during the trial of the case.

Numerous grounds of error are assigned in this Court by the defendant for reversal of the judgment of the trial court. Many are without merit and others cannot be relied upon in this Court because there were no objections made in the trial court. The controlling question on this appeal is whether or not the trial court was justified in directing a verdict for the plaintiffs.

It is contended by the defendant that the trial court erred in denying a request to allow the jury to view the property in question. This is a matter peculiarily within the discretion of the trial court and is not in any event reversible error in this case. 11 M.J., Jury, §63; *Gunn v. Ohio River Company,* 36 W.Va. 165, 14 S.E. 465, 32 Am. St. Rep. 842; *State v. Beacraft,* 126 W.Va. 895, 30 S. E. 2d 541. Inasmuch as the court directed the jury to find a verdict in this case,

this contention would have no merit if the court was correct in directing the verdict.

Without any objection having been made during the trial of the case pertaining to the question regarding the error in the recordation of the deed made by the Hogsetts to the Blains in 1944, the defendant now assigns such question as error. It is clear from the record that an error was made when the deed was presented to the clerk of the county court for recordation and a call was omitted in such recordation. This fact was not ascertained until after the controversy arose, and in order to correct the error the plaintiffs had the original deed presented to the clerk of the county court for re-recording after the institution of this suit, but prior to the trial thereof. The defendant did not at any time rely on the deed as originally recorded and not only failed to object to the re-recording but welcomed the use of the deed in its original form in order that his own surveyor would have sufficient information with which to make a proper survey. No objection having been made with regard to this matter during the trial of the case, it can not be raised for the first time in an appellate court. *Conner v. Fleshman,* 4 W.Va. 693; *Simmons v. Trumbo,* 9 W.Va. 358; *Colebank v. Garage Co.,* 75 W.Va. 389, 84 S.E. 1051; *Williams v. County Court,* 90 W.Va. 67, 110 S.E. 486; *The C. & O. Ry. Co. v. Johnson,* 137 W.Va. 19, 69 S.E. 2d 393. Again, if there was sufficient proper evidence to support a directed verdict, this contention would have no merit.

The defendant apparently questions whether or not the verdict was properly directed by the court and returned by the jury in this case and assigns this as a ground of error. It is difficult to ascertain just what is meant by this assignment. The record contains an order dated May 5, 1959, which states that the motion made by the plaintiffs for a directed verdict was sustained, the jury was so instructed, sent to its room to consider its verdict, and after a time returned into court with the following verdict: "By

direction of the Court, we, the jury, find for the plaintiffs and find that the lines of the plaintiffs' property are correctly set forth on the plat made by W. P. Shifflett.

H. E. Crump, Foreman"

The court proceeded to enter judgment on the verdict in the following language: "It is therefore adjudged and ordered that the disputed boundary line, described in petitioners' deed as 'thence in a westerly direction 18 rods to the place of beginning' be and the same is hereby declared as shown on the plat made by W. P. Shiflett as 'N. 82°. E. 297 feet', said plat being hereto attached and made a part of this order." There was no question with regard to this matter during the trial of this case and it is precluded now because a court of record speaks only through its record. 14 Am. Jur., Courts, §137; 5 M.J., Courts, §23; *Powers v. Trent,* 129 W.Va. 427, 40 S.E. 2d 837; *State v. Underwood,* 130 W.Va. 166, 43 S.E. 2d 61; *Davis v. Fire Creek Fuel Company,* 144 W.Va. 537, 109 S.E. 2d 144.

It is the contention of the defendant that it was necessary for the jury to ascertain the title of the plaintiffs for the land in question between the hedge fence and the line 82° E. 297' and to eject the defendant therefrom and that the verdict was fatally defective because it failed to do so. The case of *Toppins v. Oshel, et al.,* 141 W.Va. 152, 89 S.E. 2d 359, is cited as authority for this proposition. The *Toppins* case involved an action of ejectment. The instant case involves a statutory action to ascertain a boundary line and this was done by a verdict of the jury at the direction of the court. The verdict which is questioned has been approved in similar cases. *Brunswick and Corporation v. Perkinson,* 146 Va. 695, 132 S.E. 853; *McPherson v. Blair,* 224 Ark. 238, 273 S.W. 2d 852. The defendant asserts that the plaintiffs have not proved their title. This would be without merit even in an action of ejectment because both defendant and plaintiffs derived title from a common source and in such

case the plaintiffs need not trace their title further. 6 M.J., Ejectment, §8; *Winding Gulf Colliery Company v. Campbell,* 72 W.Va. 449, 78 S.E. 384; *Porter v. Staley,* 99 W.Va. 91, 127 S.E. 911.

Error is assigned by the defendant to the ruling of the court in refusing to allow defendant's surveyor to testify as to where the line in question between the parties was located. The trial court correctly ruled that the defendant's surveyor could not give his opinion as to where he thought this line was located. A surveyor can testify as to facts but not as to where he thinks the line is located. *Mylius v. Lumber Company,* 69 W.Va., 346, 71 S.E. 404; (Reaffirmed on another point after new trial, 73 W.Va. 674, 81 S.E. 823); *Adkins v. Gas Co.,* 120 W.Va. 401, 198 S.E. 131. The defendant's surveyor stated that he ran the survey in the manner he did in order to make the line come where the defendant claimed it was located. Such evidence should be discounted. *Putnam Company v. Fisher,* 128 W.Va. 383, 36 S.E. 2d 681.

The defendant assigns as error that the court failed to appoint a surveyor or civil engineer to establish the line in question, as provided in Code 55-4-31, as amended, and as requested by both parties in the pleadings. This request was made only in the pleadings and was never brought up again during the trial of the case. Both parties in this case employed surveyors or engineers to make surveys of the property in question. The statute dealing with this matter, Code 55-4-31, as amended, and cited by the defendant in his brief as requiring the court to appoint a surveyor, provides only that the court may direct such surveys be made as he may deem necessary. The court in the case at bar, because of other surveys having been made, did not deem it necessary to appoint a surveyor as provided by the statute. The appointment of a surveyor is clearly discretionary with the court and the fact that one was not appointed in this case would not constitute error. *Pan Coal Co.*

*v. Coal Co.*, 97 W.Va. 368, 125 S.E. 226; *Zirkle v. Coal Co.*, 103 W.Va. 614, 138 S.E. 371.

It is the defendant's contention that the trial court committed error in refusing to admit certain testimony of the common grantors' son and daughter as to the location of the boundary line. If it is improper for a surveyor to give an opinion as to the true location of a boundary line, it is also improper for other witnesses to do so and it is only where the monuments are lost that the location may be proved by reputation. *Faulkner v. Thorn*, 120 W.Va. 575, 200 S.E. 581. The monuments were not lost in the instant case. The starting or beginning point in Blains' deed of 1944 was agreed upon and used by both parties to this suit and the iron pin was placed in the ground at the time of the conveyance by the common grantors and Blain. This boundary line which is N. 82° E. 297' is the line in question, but one terminus of it is undisputed in this case. The other end was fixed by plaintiffs and the common grantors and defendant took his land subject to the previous grant to plaintiffs.

It is true that a surveyor who is familiar with and has had extensive experience in connection with monuments and courses used in a survey may give his opinion as to the identity of monuments. *Winding Gulf Colliery Co. v. Campbell*, 72 W.Va. 449, 78 S.E. 384. However, that is an entirely different situation from the one existing here in that the surveyor was not only unfamiliar with the monuments or corners involved in this survey but was asked to give his opinion as to the location of the entire line, the very issue involved in this case.

The defendant, in his brief, questions the use of the reference to the Buskirk lines in the survey made by plaintiffs and contends that it was necessary to introduce Buskirk's deed in evidence in order to show the adjacent boundary thereof. This point is not well taken because during the trial of the case Buskirk's lines were agreed upon by the defendant's engineer

as being the lines called for in plaintiffs' deed. The defendant also indicates that it was necessary to locate the military line which was never brought up in the trial of the case. This line is not only referred to in plaintiffs' deed but in two of the defendant's deeds in which the 5 acre tract owned by the plaintiffs is specifically excluded. Where reservations are contained in a deed it is not only necessary for the party bearing the burden of going forward with the evidence with relation to such deed to show the exterior boundaries but the land excluded or reserved must be located by him as well. *Stockton v. Morris,* 39 W.Va. 432, 19 S.E. 531.

It is the contention of the defendant that a survey could not be made from the description contained in the plaintiffs' deed and the lines could not be determined without going upon the property and locating the lines. A survey was made by the plaintiffs' engineer and it was made by going onto the property and locating monuments, using the description of same in the plaintiffs' deed in so doing. This is the method by which surveys are made. The main contention by the defendant with regard to the survey is that the plaintiffs' deed did not contain courses. This is unnecessary if the natural landmarks, artificial monuments and adjacent boundaries can be located. In fact, they take preference over courses and distances. *Matheny v. Allen,* 63 W.Va. 443, 60 S.E. 407; *W.Va. Pulp & Paper Co. v. J. Natwick & Co.,* 123 W.Va. 753, 21 S.E. 2d 368.

The defendant objects to the judgment of the court referring to the boundary line as the disputed line and fixing the line as called for in plaintiffs' deed by description therein and also by courses and distances referring to a plat showing the line and attached to the order and made a part thereof. This clearly locates the line in question to be determined by this action as being the true location of the disputed line and conforms to the issue to be tried as provided by Code 55-4-31, as amended, which reads as follows:

"* * * the true boundary line or lines of such real estate." From a complete review of the evidence contained in the record of this case it fails to support in any manner the location of the line claimed by the defendant. On the other hand, the evidence overwhelmingly supports the contention of plaintiffs as to the line in question. The northernmost line of plaintiffs' property which adjoins defendant's property 264' north of the line in question was definitely located and fixed in the trial of this action. It is fixed by courses and distances and the reference to natural objects or monuments in plaintiffs' deed and cannot now be changed from its location. It corresponds with the location as called for in plaintiffs' deed and the defendant admitted that he thought that was where the line was located when he obtained his deed in 1948. When this line is fixed it fixes the line in question as the true line between the property of the plaintiffs and defendant which is the line found by the verdict of the jury at the direction of the court and carried out in the judgment of the court, both in the description given in plaintiffs' deed of 1944, with monuments and distances and with courses and distances based on plaintiffs' survey. There is no conflict in the evidence with regard to this matter and it was clearly the duty of the trial court to direct a verdict in favor of the plaintiffs. *Acree v. Eureka Pipe Line Co.*, 122 W. Va. 242, 8 S. E. 2d 186; *Adkins v. Aetna Life Ins. Co.*, 130 W. Va. 362, 43 S. E. 2d 372. If the trial court had not directed a verdict and the jury returned a verdict for the defendant, such verdict would have to be set aside. *Bank of White Sulphur Springs v. Lynch*, 93 W. Va. 382, 116 S. E. 685; *Musser v. N. & W. R. Co.*, 122 W. Va. 365, 9 S. E. 2d 524. The action of the court in directing the verdict being proper, most of the errors discussed herein and many others would be meaningless. This is clearly indicated with regard to the motion to have the jury view the property as well as errors assigned as to improper evidence omitted or excluded.

For the reasons referred to and discussed herein,

it is manifest that the judgment of the Circuit Court of Mason County be, and is, affirmed.

*Affirmed.*