416 S.E.2d 245

**Jesse WARD, Plaintiff Below, Appellee,**

**v.**

**Luther MARSHALL and Bessie Marshall, Defendants Below, Appellants.**

**No. 20170.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 21, 1992.

Decided March 20, 1992.

Rehearing Denied May 13, 1992.

J. Randolph Query, Charleston, for defendants below, appellants.

Thomas K. Patterson, Beckley, for plaintiff below, appellee.

PER CURIAM:

Jesse Ward instituted an action for ejectment against Luther and Bessie Marshall in a dispute over the ownership of approximately 4 acres of land in Raleigh County. After the trial, the jury rendered a verdict in favor of Mr. Ward and the Circuit Court of Raleigh County denied Mr. and Mrs. Marshall's motions for a directed verdict and a new trial. Mr. and Mrs. Marshall appeal to this Court claiming that because an analysis of the deeds resolved the issue of ownership in favor of Mr. and Mrs. Marshall, there was no genuine issue of fact for the jury to decide. Based on our review of the record, we find that an analysis of the deeds could not resolve the ownership of the disputed property and thus, there was a genuine issue of material fact that was properly submitted to and resolved by the jury.

Both Mr. Ward and Mr. and Mrs. Marshall claim title to approximately 4 acres of land in Marsh Ford District, Raleigh County. Mr. and Mrs. Marshall claim title to the disputed property under a deed dated May 8, 1978, granted by Walter L. and Nancy Lee Bragg. Mr. Ward claims title to the disputed property under a deed dated January 21, 1977, granted by Marion W. and Helen Lois Helmuth. The Marshalls' deed contains a general property description, which requires an on-site reference to the markers and the Ward's deed contains a metes and bounds description.[1] Although the parties agree that the description in Ward's deed encompasses the disputed property, the parties disagree about the extent of the property encompassed by the description in the Marshalls' deed. Mr. Ward maintains that the Marshalls' property consists of a wedge of land between his southern border and a tract owned by Ora Bowman. The Marshalls maintain that their property includes not only the wedge, but also extends northward across a right of way to include about 4 acres of bottom land, part of the land claimed by Mr. Ward.

Both Mr. Ward and the Marshalls had their respective properties surveyed and plotted on a map. Neither had the other party's property surveyed and plotted. Both tracts were commonly owned on two separate occasions and during each period of common ownership, the outconveyance of the Marshall tract preceded the outconveyance of the Ward tract. Because it is undisputed that the Marshalls' title is senior, the location and the extent of the Marshall tract was the issue at trial.

Both Mr. Ward and the Marshalls presented civil engineers as expert witnesses. Roy Shrewsbury, Mr. Ward's expert,

---

1. The Marshalls' deed contained the following description:

Beginning at the southwest corner of W.M. Taylor's lot running straight across the bottom to the branch, and thence running in a north direction with the branch to a willow, leaving the branch and still running north to a stone; thence in an eastern direction to a stone, a corner to William Taylor's lot near the road at the foot of Rock Creek Mountain; thence running with the William Taylor's line to the beginning corner.

The Ward's deed contained the following description:

Beginning at two sourwoods on side of Rock Creek, corner to Lot 1, thence 81–1/2 E. 68 poles to a large hickory, S. 47–1/2 W. 11 poles to two hickories, S. 29 W. 7–3/4 poles to two hickories, S. 11–2/5 E. 6–3/4 poles to a stone white oak pointer S. 18–1/4 E. 30–3/4 poles to a stake, chestnut, oak and gum pointers, corner to Lot 3; thence with the same S. 23–1/2 W. 36–1/2 poles to a white oak, S. 48 W. 12 to Rock Creek Road; thence with said road S. 64 E. 17–4/5 poles, N. 55–1/2 E. 6–1/2 poles to _____ N. 36 E. 9–1/4 poles, S. 17–1/2 E. 25–3/4 poles, S. 12 W. 16 poles, S. 38 W. 12–4/5, S. 54–3/4 W. 12 poles, S. 21–1/4 W. 14–3/4 poles, S. 7–1/2 W. 14–3/4 poles, S. 15–1/2 poles, S. 5 W. 3 poles to a chestnut, corner to Lot 1, thence with same N. 41° 12 poles W. 16 poles to a chestnut, N. 12–1/2 W. 50 poles to a stone in a branch; N. 33° 36' W. 25 poles to a stone, N. 13° W. 12–3/5 poles to a branch, N. 22° W. 12–1/5 poles to a stake, N. 17–1/2 W. 7–1/5 poles to a white oak stump N. 29–1/4 – – – – – – 12–1/2 poles to a maple and dogwood, N. 22–3/4 E. 9–2/5 poles to a small poplar N. 2 27–1/2 E. 28–3/4 poles to a hickory on top of Rock Creek Mountain, N. 55° 36' W. 17–2/5 poles to a small black oak, N. 21–1/2° E. 9 poles to the beginning, and containing 49 acres and 125 poles.

testified that the Ward tract included the disputed property and that the Ward and Marshall tracts were separate and distinct pieces of property because each tract was individually acquired and disposed of when the tracts had a common ownership. Mr. Shrewsbury also testified that the Marshall tract could only be plotted by a physical or on-site reference to the monuments, but because of the separate chain of title for each tract and the references in the Marshall tract's description, he thought the Marshall tract was located south of the right of way and therefore, did not overlap the Ward tract.

Gary O. Bledsoe, the Marshalls' expert witness, testified that the Marshall tract included not only a wedge of land south of the right of way but also included about 4 acres of land north of the right of way. Mr. Bledsoe agreed that the land north of the right of way was also included in the Ward tract. Mr. Bledsoe testified that in order to plot the Marshall tract he made several assumptions concerning the markers identified in the Marshalls' property description including the beginning reference.

During Mr. Bledsoe's cross-examination, Mr. Ward challenged several of the location assumptions. For example, Mr. Ward pointed out that although the Marshalls' property description began with "the southwest corner to W.M. Taylor's lot," Mr. Bledsoe disregarded the directional reference and started from the northeast corner because he knew "that the Marshall tract lays above the Bowman tract." Mr. Ward also showed that the "stone" with a mark, which Mr. Bledsoe assumed to mark the northern boundary of the Marshall tract, was the boundary marker for another unrelated tract. Mr. Ward also showed that the Marshalls' deed references to the "branch" and "foot of Rock Creek Mountain" could refer to physical features other than those identified by Mr. Bledsoe.

Walter Bragg, Sr., who sold the property to the Marshalls, testified that before he sold the property to the Marshalls, he showed them that the property consisted of a small wedge, less than an acre, located south of the right of way. According to Mr. Bragg, he told the Marshalls that the property was worthless. Mr. Bragg also testified that the "stone," which marked the property's northern boundary had been located at the right of way, but was removed in the 1960's.

Mrs. Marshall testified that she paid Mr. and Mrs. Bragg $3,000 for the property and that the property shown to her by Mr. Bragg included the bottom land north of the right of way.[2]

In addition to the conflicting surveyors' opinions, the jury also had to consider the disparity between Mr. Bragg's and Mrs. Marshall's testimony. After the jury returned a verdict in favor of Mr. Ward, the circuit court denied the Marshalls' motions for a directed verdict and a new trial. On appeal, Mr. and Mrs. Marshall allege that the ownership of the disputed property could have been resolved by merely analyzing the deeds.

■ We find that the deeds in the present case cannot be analyzed without resolving a factual question concerning the disputed boundaries. Because more than one reasonable conclusion can be drawn from the evidence, a motion for judgment notwithstanding the verdict is not proper. In Syllabus Point 7, *McClung v. Marion County Commission*, 178 W.Va. 444, 360 S.E.2d 221 (1987), we said:

> In a case where the evidence is such that the jury could have properly found for either party upon the factual issues, a motion for judgment notwithstanding the verdict should not be granted.

*In accord* Syllabus Point 4, *Sias v. W-P Coal Co.*, 185 W.Va. 569, 408 S.E.2d 321 (1991).

In *Wilson v. McCoy*, 86 W.Va. 103, 103 S.E. 42 (1920) (*Wilson I*), we considered a property dispute in which one of the "ter-

---

**2.** Mrs. Marshall and Mr. Bragg also disagreed on the property's purchase price. Mrs. Marshall contends that she paid $3,000, the consideration stated in the deed. Mr. Bragg contends that he received $1,000 for the property and that the deed overstated the consideration at the Marshalls' request in case they wanted to borrow money on the property.

minal monuments" was not definitely ascertained. In *Wilson I,* the different locations of the terminal monuments led to a variety of lines to the known monuments. In *Wilson I,* we concluded that the "ambiguity and uncertainty" created by the different locations of the terminal monuments and the variety of lines to known monuments, created a situation that was "the peculiar province of the jury to solve." *Wilson I, id.* 86 W.Va. at 113, 103 S.E.2d at 46.

In *Wilson I,* we declined to disturb a jury verdict when the evidence was conflicting concerning the location of the property because of the disputed location of the monuments. In Syllabus Point 1, *Wilson I, id.,* we said:

Where a deed calls for a line between monuments as well as by course and distance, one of which monuments is standing well marked and unquestioned, while the other has long since disappeared and its location is not definitely ascertained, and surveyors differ in their locations of the latter, with the result that recent surveys, purporting to represent such line, materially vary, each being supported by measurements to and from other known monuments, thereby enveloping its true location in doubt and uncertainty, the solution of the conflict so presented is peculiarly within the province of a jury, and its finding, in the absence of a clear preponderance of evidence to the contrary and of prejudicial error during the course of the trial, cannot properly be disturbed by the trial court upon motion or upon writ of error from this court.

*See also Wilson v. McCoy,* 93 W.Va. 667, 670, 117 S.E. 473, 474 (1923) (holding the location of a disputed boundary line is "a question of fact for the jury"); Syllabus Point 2, *Zirkle v. Three Forks Coal Co.,* 103 W.Va. 614, 138 S.E. 371 (1927) ("the question of the true location of the line is clearly for the jury to determine").

In the present case, we find that the evidence of the location of the Marshall tract was conflicting, especially the location of the "stone," marking the northern boundary and the "foot of Rock Creek Mountain," marking the southeastern boundary. The record also contains a factual dispute concerning the information of the tract's location given when the tract was sold to Mr. and Mrs. Marshall. Because in this case the jury's verdict is supported by sufficient evidence, we decline to disturb the jury's resolution of a factual question.

For the above stated reasons, the judgment of the Circuit Court of Raleigh County is affirmed.

Affirmed.